**Khosrow Gharib RASHTABADI,**
Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 92–70747.

United States Court of Appeals,
Ninth Circuit.

Submitted * April 5, 1994.

Decided May 11, 1994.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

1564

Gary Silbiger, Silbiger & Honig, Los Angeles, CA, for petitioner Khosrow Gharib Rashtabadi.

Carl H. McIntyre, Jr., Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent I.N.S.

Before: HALL, LEAVY, and FERNANDEZ, Circuit Judges.

Opinion by Judge FERNANDEZ.

FERNANDEZ, Circuit Judge:

Khosrow Rashtabadi, a citizen of Iran, petitions for review of the Board of Immigration Appeals' affirmance of an immigration judge's decision which found him deportable under 8 U.S.C. § 1251(a)(1), denied his application for adjustment of status, 8 U.S.C. § 1255(a), found him ineligible for a waiver of inadmissibility, 8 U.S.C. § 1182(h), and denied his request for voluntary departure, 8 U.S.C. § 1254(e). We dismiss the petition in part, grant it in part, and deny it in part.

## BACKGROUND

Rashtabadi came to this country from Iran in 1980. At the time of his entry, he did not have any valid entry documentation. In July 1982, Rashtabadi was arrested for his part in an elaborate fraud scheme in which several investors were held hostage at a house during a fake "police raid." On July 23, 1982, while he was awaiting trial on grand theft and false imprisonment charges, the INS served an order to show cause on Rashtabadi. It alleged that he was deportable under 8 U.S.C. § 1251(a)(1) as an alien who entered for the purpose of residing permanently in the United States without a valid immigrant visa or other entry documents.

Subsequently, Rashtabadi was convicted of false imprisonment and grand theft. On February 1, 1983, a state superior court judge sentenced him to seven years and four months in prison. Rashtabadi's request that the court issue a Judicial Recommendation Against Deportation ("JRAD"), 8 U.S.C. § 1251(b)(2) (repealed 1990), was denied, and he appealed. Although there is no documentation in the administrative record regarding the outcome of the appeal, on October 1, 1984, Rashtabadi's sentence was reduced to six years imprisonment and his renewed request for a JRAD was granted.

Upon his release from prison, Rashtabadi's deportation proceeding began. At a January 28, 1986 hearing, his attorney admitted the allegations of the OSC and the charge of deportability. Rashtabadi eventually applied for adjustment of status, 8 U.S.C. § 1255(a), and voluntary departure, 8 U.S.C. § 1254(e). The immigration judge denied both applications.

Rashtabadi then appealed to the BIA, where he argued that: 1) because his JRAD was effective and barred the IJ from considering the conviction in making the admissability determination, the IJ erred in finding him inadmissable to the United States under 8 U.S.C. § 1182(a)(9) on the basis of his grand theft conviction; 2) even if he were inadmissable, his application for a waiver of inadmissibility was improperly denied because he demonstrated that his deportation would result in extreme hardship to his citizen spouse; and 3) the IJ erred in using his conviction to deny his application for voluntary departure. The BIA reviewed the case de novo, rejected all of petitioner's arguments, and affirmed the IJ's oral decision. This petition for review ensued.

## JURISDICTION AND STANDARD OF REVIEW

### A. Standard of Review

The BIA's review of an order denying adjustment of status is reviewed for abuse of discretion. *Jen Hung Ng v. INS,* 804 F.2d 534, 538 (9th Cir.1986); *Soo Yuen v. INS,* 456 F.2d 1107, 1108 (9th Cir.1972) (per curiam). The same standard of review applies to BIA decisions denying discretionary relief from deportation, *Foti v. INS,* 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963); *Yepes–Prado v. INS,* 10 F.3d 1363, 1366–67 (9th Cir.1993); *Vargas v. United States Dept. of Immigration and Naturalization,* 831 F.2d 906, 908 (9th Cir.1987), and to the discretionary denial of an application for voluntary departure. *Abedini v. INS,* 971 F.2d 188, 191 (9th Cir.1992).

Because the BIA undertook a de novo review of the propriety of all of the forms of relief for which Rashtabadi applied, we review its decision, not that of the IJ. *See*

*Yepes–Prado*, 10 F.3d at 1366–67; *Elnager v. INS*, 930 F.2d 784, 787 (9th Cir.1991); *cf. Campos–Granillo v. INS*, 12 F.3d 849, 852 (9th Cir.1993) (where BIA fails to perform independent review of IJ's decision, court of appeals must review the IJ's decision de novo).

### B.   *Jurisdiction*

The BIA had jurisdiction to review the immigration judge's decision under 8 C.F.R. §§ 3.1(b)(2), 242.21 (1993). In general, we have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1105a(a).

■ However, Rashtabadi raises two arguments in his petition to this court that he did not raise before the BIA. He argues that his admission of deportability should be overturned because the immigration judge failed to advise him of his constitutional and statutory rights before accepting his admission, and because his attorney admitted deportability without his consent. We lack jurisdiction to resolve either of these issues.

Absent overriding justification, an alien must exhaust his administrative remedies prior to seeking review of a deportation order. Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.

*Vargas*, 831 F.2d at 907–08 (citation omitted); *accord Contreras–Buenfil v. INS*, 712 F.2d 401, 404 (9th Cir.1983); *see* 8 U.S.C. § 1105a(c). An exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and INS procedures. *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 746–48 (9th Cir.1991). Because the BIA has no jurisdiction to adjudicate constitutional issues, the Act's exhaustion requirement does not preclude petitioners from raising them for the first time before the Court of Appeals. *Bagues–Valles v. INS*, 779 F.2d 483, 484 (9th Cir.1985).

■ Notwithstanding the exception, "a petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process." *Reid v. Engen*, 765 F.2d 1457, 1461 (9th Cir.1985). Those allegations do not guarantee review in the court of appeals of "procedural errors correctable by the administrative tribunal." *Id.; accord Bagues–Valles*, 779 F.2d at 484.

Rashtabadi's allegations of due process violations are exactly the sorts of procedural errors which require exhaustion. Given the opportunity, the BIA could have corrected any of the alleged procedural errors. *See Matter of Lemhammad*, Interim Decision No. 3151 at 12, 1991 WL 353518 at *14–*16 (BIA1991) (alleged denial of right to confront witnesses); *Matter of Duran*, Interim Decision No. 3101 at 3, 1989 WL 331857 at *4 (BIA1989) (immigration judge's alleged failure to advise alien of his rights and other due process violations). Thus, since Rashtabadi did not present his arguments to the BIA, we have no jurisdiction to resolve them.

■ To the extent that Rashtabadi argues that because he was represented on appeal by the same counsel who represented him at his deportation hearing, he could not raise his consent claim, he can move the Board to reopen his appeal. *Vides–Vides v. INS*, 783 F.2d 1463, 1470 (9th Cir.1986) (discussing raising ineffective assistance claims before the BIA on a motion to reopen after substituting counsel); *Roque–Carranza v. INS*, 778 F.2d 1373, 1373–74 (9th Cir.1985) (same); *see* 8 C.F.R. §§ 3.2, 3.8(a) (1993) (procedures for motion to reopen or reconsider). Thus, we dismiss this part of his petition for lack of jurisdiction.

### DISCUSSION

Rashtabadi's arguments can be grouped into two primary claims. The first is that he was entitled to have the BIA exercise its discretion to adjust his status. The second is that he was entitled to a favorable exercise of discretion on his request for voluntary departure.

### A.   Adjustment of Status

■ Every alien who applies for adjustment of status under 8 U.S.C. § 1255 bears

the burden of proving that he meets the statutory requirements for eligibility. *Id.* § 1255(a); *Kim v. Meese,* 810 F.2d 1494, 1496 (9th Cir.1987).

Even if the alien succeeds in making the required showing of eligibility, however, the INS's decision to grant an adjustment of status is purely discretionary. Adjustment of status is an extraordinary remedy to be granted only in meritorious cases, and the alien has the burden of persuading the [INS] to exercise [its] discretion favorably. Every adjustment of status, therefore, is predicated upon both a showing of eligibility and a favorable exercise of agency discretion.

*Id.* at 1497 (internal citations and quotations omitted) (alterations in original).

One of the elements of eligibility for adjustment is that "the alien is ... admissible to the United States for permanent residence[.]" 8 U.S.C. § 1255(a)(2). An alien is excludable from admission into the United States if he has been "convicted of ... a crime involving moral turpitude[.]" *Id.* § 1182(a)(2)(A)(i)(I).

#### (1) Statutory Eligibility

▉▉▉▉ Rashtabadi was convicted of two counts of grand theft, Cal.Penal Code § 487(1) (West 1988), which is a crime of moral turpitude. *Matter of Chen,* 10 I. & N. Dec. 671, 672 (BIA1964). As a result, the BIA found that he was excludable from admission to the United States, 8 U.S.C. § 1182(a)(2)(A)(i)(I), and, therefore, ineligible for adjustment of status, *id.* § 1255(a)(2), unless he could prove entitlement to a waiver of inadmissibility. That determination was erroneous.

When it resentenced Rashtabadi, the state court issued a JRAD which, if it was validly issued, barred the INS from considering his conviction of a crime of moral turpitude ei-

ther as a ground for deportation under 8 U.S.C. § 1251(a)(4), *Jew Ten v. INS,* 307 F.2d 832, 834–35 (9th Cir.1962), *cert. denied,* 371 U.S. 968, 83 S.Ct. 551, 9 L.Ed.2d 538 (1963), or as a ground for excluding him from admissibility to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(I), *see Matter of K——,* 9 I. & N. Dec. 121, 125 (BIA1960) (extending beneficial effect of JRAD to 8 U.S.C. § 1182(a)(9), the equivalent of § 1182(a)(2)(A)(i)(I) of the current statute). The INS argued that the JRAD was not effective because it was not validly issued. The BIA agreed.[1]

Prior to 1990, when an alien was convicted of a crime of moral turpitude that would render him deportable under 8 U.S.C. § 1251(a)(4), the sentencing court could, within 30 days of first imposing judgment or passing sentence, issue a JRAD. 8 U.S.C. § 1251(b)(2) (repealed 1990). A JRAD issued after the 30 day period expired was untimely and had no legal effect. Nonetheless, where a sentence was vacated and a new sentence was imposed, the date of the second sentence served as the "time of first imposing judgment" under the statute and a JRAD issued within 30 days of that time was effective. If a conviction or sentence was vacated for the sole purpose of enabling the court to issue a JRAD that was not timely granted, a JRAD issued at the time of resentencing was not considered timely or effective. *Matter of P——,* 9 I. & N. Dec. 293, 294–95 (Att'y Gen. 1961).

At Rashtabadi's first sentencing, on February 1, 1983, the court denied his request for a JRAD. He appealed his original sentence and was subsequently resentenced to a shorter prison term. At the second sentencing, on October 1, 1984, the judge issued a JRAD. The administrative record does not indicate why Rashtabadi was resentenced. There is no record of his arguments to the state court

---

1. The BIA and other circuits have assumed that the BIA may entertain what amount to collateral attacks on final court orders. *See Zaitona v. INS,* 9 F.3d 432, 435–36 (6th Cir.1993); *Haller v. Esperdy,* 397 F.2d 211, 214–15 (2d Cir.1968); *Matter of P——,* 9 I. & N. Dec. 293, 294–95 (Att'y Gen.1961); *cf. Sawkow v. INS,* 314 F.2d 34, 36–37 (3d Cir.1963) (refusing to review criminal court's reasons for vacating alien's first convic-

tion, but reviewing validity of JRAD issued at second sentencing). Neither party has questioned that assumption, either before the BIA or in their briefs on appeal. Accordingly, we likewise assume the BIA has such authority. *See United States v. Reyes,* 8 F.3d 1379, 1390 (9th Cir.1993) (ordinarily an issue raised for the first time on appeal is not considered by this court).

of appeals, the reasons for the appellate decision overturning his sentence, or the reasons for the shorter sentence imposed at resentencing. However, the record does reflect a significant change in the sentence itself. Rather than running the sentences on certain counts consecutively to the principal count, the sentences were stayed and his term of imprisonment was reduced by sixteen months.

The INS argued, and the BIA found, that the JRAD was not effective because Rashtabadi failed to prove that its issuance was not the sole purpose of his resentencing. Thus, the argument goes, the time for issuing the JRAD should have been measured from the date of the original sentencing; and, because the JRAD was issued more than 30 days after that, it was not timely.

It is true that once the INS has made its prima facie case of deportability, "[t]he burden of going forward to produce evidence of nondeportability then shifts to the [alien]." *Cabral–Avila v. INS,* 589 F.2d 957, 959 (9th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1245, 59 L.Ed.2d 472 (1979). Nonetheless, a proper respect for the courts, both state and federal, requires that their orders, including JRAD orders, be considered valid and effective, unless they can be shown to be otherwise. As the United States Supreme Court stated well over a century ago:

> There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears: and this rule applies as well to every judgment or decree, rendered in the various stages of their proceedings, from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated, becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged.

*Voorhees v. Jackson,* 35 U.S. (10 Pet.) 449, 472, 9 L.Ed. 490 (1836); *see also Avila–Murrieta v. INS,* 762 F.2d 733, 736 (9th Cir.1985) (INS may not examine the validity of a conviction for deportation purposes); *cf.*

*Ramirez–Juarez v. INS,* 633 F.2d 174, 175–76 (9th Cir.1980) (per curiam) (prior deportation order cannot be challenged in subsequent deportation hearing on a different charge); *Hernandez–Almanza v. INS,* 547 F.2d 100, 102–03 (9th Cir.1976) (same). Even Article III courts have been directed to give great weight to the decisions of state courts. *See, e.g.,* 28 U.S.C. § 1738 (state court decisions are to be given full faith and credit); *Id.* § 2254 (in habeas corpus proceedings state factual determinations are usually presumed to be correct); *see also Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938) (when collaterally attacked, absent proof of constitutional infirmity, judgment is presumed valid); *accord Barefoot v. Estelle,* 463 U.S. 880, 887–88, 103 S.Ct. 3383, 3391–92, 77 L.Ed.2d 1090 (1983) ("when the process of direct review ... comes to an end, a presumption of finality and legality attaches to the conviction and sentence"); *Loper v. Beto,* 405 U.S. 473, 497–503, 92 S.Ct. 1014, 1026–29, 31 L.Ed.2d 374 (1972) (Rehnquist, J., dissenting) (same). Also, in the area of sentencing, we do permit collateral attacks on prior convictions. *See United States v. Vea-Gonzales,* 999 F.2d 1326, 1332–33 (9th Cir.1993). However, a state court judgment is sufficient to establish the conviction unless the defendant comes forward with evidence that the sentence is invalid. *United States v. Newman,* 912 F.2d 1119, 1121–22 (9th Cir.1990); *see Parke v. Raley,* —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992).

Principles of comity, finality and economy all militate in favor of placing the burden of attacking court judgments and orders on the party who seeks to upset them. Nothing suggests that these principles should have less force in the area of JRADs. Rather, they have particular force where, as with a JRAD, the party who seeks to attack its validity had notice of and the right to appear in the proceeding where the order was issued. When an alien produces a JRAD order that is valid on its face, the burden of going forward with evidence of its invalidity must devolve upon the INS. That evidence need not be extensive, but absent *any* evidence to the contrary, the alien must

be found to have fulfilled his burden of persuasion, and the JRAD must be found to be effective.

When these principles are applied to this case it is clear that the BIA erred. It was presented with a JRAD order from the Superior Court of the State of California which was, in all respects, valid on its face. There was no further evidence which cast doubt upon that order's validity. In fact, the record strongly suggested validity. It is perspicuous that the second sentencing did affect a significant change in the sentence itself. Certainly there is not the slightest hint that its sole purpose was to allow issuance of a JRAD. Thus, on this record it should have been found valid.

The result of a finding of validity is that under the BIA's own holdings (followed in this case) the JRAD precluded a finding that the grand theft convictions made Rashtabadi excludable. 8 U.S.C. § 1182(a)(2)(A)(i). That, of course, does not mean that the felonies cannot be considered for other purposes. They can, for example, be used as part of the balancing in deciding whether a discretionary adjustment of status should be granted. *Delgado–Chavez v. INS,* 765 F.2d 868, 869–70 (9th Cir.1985).

### (2). Entitlement to a Favorable Exercise of Agency Discretion

Because he was statutorily eligible for adjustment of status, we must review the BIA's determination that Rashtabadi failed to establish his entitlement to favorable exercise of agency discretion. One general, analytical approach governs all decisions on whether to grant discretionary relief. *Matter of Marin,* 16 I. & N. Dec. 581, 586 (BIA1978). The BIA or the IJ decides whether an applicant is entitled to a favorable exercise of agency discretion on a case by case basis by "taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent res-

ident." *Yepes–Prado,* 10 F.3d at 1365–66; *see Campos–Granillo,* 12 F.3d at 852 (listing positive and negative factors for review); *Matter of Edwards,* 8 Immig. L. & P. Rptr. B1–1, –4 to –5 (BIA1990) (same). Where an alien has committed a particularly grave criminal offense, he may be required to make a heightened showing that his case presents unusual or outstanding equities.[2] *Yepes–Prado,* 10 F.3d at 1366; *Matter of Arai,* 13 I. & N. Dec. 494, 496 (BIA1970). This approach is employed in considering applications for adjustment of status, *Matter of Patel,* 17 I. & N. Dec. 597, 601 (BIA1980); *Arai,* 13 I. & N. Dec. at 495–96, voluntary departure, *Matter of Rojas,* 15 I. & N. Dec. 492, 493 (BIA1975), and waiver of inadmissibility, *Matter of Edwards,* 8 Immig. L. & P. Rptr. B1–1, –4 to –5 (BIA1990) (discussing waiver under section 1182(c)); *Marin,* 16 I. & N. Dec. at 586 (same).

We recently held that the INS is required to "weigh favorable and unfavorable factors by evaluating all of them, assigning weight to each one separately and then to all of them cumulatively." *Campos–Granillo,* 12 F.3d at 852 (internal quotations omitted). Furthermore, "[i]n making a discretionary immigration decision, the agency must indicate how it weighed the factors involved and how it arrived at its conclusion." *Yepes–Prado,* 10 F.3d at 1370 (internal quotations omitted); *see Dragon v. INS,* 748 F.2d 1304, 1307 (9th Cir.1984).

In this case, the BIA did a fairly thorough job of evaluating several of the factors, weighed them against one another, indicated how it weighed them, and said how it reached its conclusion that Rashtabadi was not entitled to the favorable exercise of agency discretion. The BIA found two negative factors, both of which it accorded great weight. First, it found that Rashtabadi's entry into this country as a visitor to the United States with a preconceived intent to remain permanently weighed heavily against him, in that it was a deportable violation of the INA. *See Castillo v. INS,* 350 F.2d 1, 4 (9th Cir.1965).

---

**2.** The unusual or outstanding equities test is often applied to aliens who have violated controlled substance laws, but it is by no means limited to drug offenders. The test may be applied to any alien who has committed a sufficiently serious offense. *Matter of Buscemi,* 6 Immig.L. & P.Rptr. B1–57, –62 (BIA1988); *Marin,* 16 I. & N. Dec. at 585.

Second, the BIA found that Rashtabadi's crimes were a very strong negative factor because they were concocted and carried out over a long period of time, involved putting the victims at risk of serious injury or death because guns were used, and involved a plot to steal nearly $1,000,000. It further held that the crimes were sufficiently serious that Rashtabadi would have to show unusual or outstanding equities in order to establish his entitlement to a favorable exercise of discretion. On the other side of the scale, the BIA found evidence of only two positive factors in the record: Rashtabadi's family in the United States and the length of his residence in this country. It noted that, although Rashtabadi had lived in this country for more than seven years by the time of his deportation hearing, he had spent more than half of that time incarcerated. The duration of his residence was, therefore, not a strong positive factor. In light of the strong negative factors in the case, the BIA held that Rashtabadi had not demonstrated strong enough positive factors either to balance the negative factors or to prove unusual or outstanding equities that merited discretionary relief, so it denied relief.

Although the administrative record supports all of the findings concerning the presence and strength of the four factors analyzed, it also contains evidence of an additional positive factor that the BIA apparently failed to consider: rehabilitation. But, the BIA itself has stated that evidence of rehabilitation must be considered in a case involving an alien who has committed a serious criminal offense. *See Yepes–Prado*, 10 F.3d at 1373. Rashtabadi submitted evidence which demonstrated that while in prison he attended G.E.D. and vocational education classes. Evaluations from his instructors spoke highly of his character and performance in class. Furthermore, we have held that "rehabilitation can be established by the absence of subsequent criminal conduct." *Yepes–Prado*, 10 F.3d at 1372. There is no evidence of any further arrests or convictions between Rashtabadi's release from prison in September 1985 and the IJ's decision and the notice of appeal to the BIA in April 1987. That is at least probative of his rehabilitation.

Notwithstanding the evidence of rehabilitation, the BIA did not mention that factor in its decision. The failure to consider an important factor or to make a record of considering it constitutes an abuse of discretion. *See Cerrillo–Perez v. INS*, 809 F.2d 1419, 1422 (9th Cir.1987) (agency abuses its discretion by failing to state reasons and show proper consideration of all factors when weighing equities and denying relief); *Mattis v. INS*, 774 F.2d 965, 967 (9th Cir.1985) (court cannot assume that INS considered a factor that it did not mention); *see Yepes–Prado*, 10 F.3d at 1370 ("Agencies abuse their discretion no less by arriving at plausible decisions in an arbitrary fashion than by reaching unreasonable results."). We are, therefore, constrained to grant Rashtabadi's petition and to remand this matter to the BIA for its further consideration.

**B. Voluntary Departure**

A petitioner who seeks voluntary departure under 8 U.S.C. § 1254(e) has a two part burden. He must first establish his statutory eligibility for that relief and then show that he is entitled to a favorable exercise of agency discretion. *Villanueva–Franco v. INS*, 802 F.2d 327, 329 (9th Cir.1986); *Delgado–Chavez*, 765 F.2d at 869. Rashtabadi failed to establish his statutory eligibility for voluntary departure.

In order to be eligible for voluntary departure, an alien must "establish ... that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure...." 8 U.S.C. § 1254(e)(1). The law provides that:

> No person shall be regarded as ... a person of good moral character who, during the period for which good moral character is required to be established, is, or was ... one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate of one hundred and eighty days or more....

8 U.S.C. § 1101(f)(7). Rashtabadi did not dispute that he was incarcerated as a result of his grand theft and false imprisonment convictions for more than 180 days out of the five years prior to his application for volun-

tary departure. He argued only that the JRAD precluded the INS from considering his conviction in determining his eligibility for voluntary departure.

We have previously held that, even where there is a JRAD, the INS may consider a conviction for the purpose of deciding whether an alien is a person of good moral character who is statutorily entitled to discretionary relief under section 1254(e). *See Delgado–Chavez*, 765 F.2d at 870. Thus, it was proper for the BIA to consider Rashtabadi's conviction in determining his application for voluntary departure. Because Rashtabadi had been incarcerated as a result of his conviction for more than 180 days during the five years preceding his application, he was not a person of good moral character for the statutorily required period and was statutorily ineligible for voluntary departure. Thus, we deny this portion of his request for relief.

### CONCLUSION

Rashtabadi did commit a dangerous and desperate crime in which his victims were taken hostage. Nevertheless, the trial court issued a JRAD on his behalf. The INS claimed that the JRAD was not valid, but it presented no evidence to that effect. "[E]very act of a court of competent jurisdiction should be presumed to have been rightly done, till the contrary appears...." *Voorhees*, 35 U.S. (10 Pet.) at 472. Therefore, on this record the BIA erred when it chose to ignore the JRAD. We are also unable to uphold the BIA's alternate decision that Rashtabadi is not entitled to an exercise of discretionary adjustment of status. When the BIA ignored rehabilitation, it failed to comply with the legal requirement that it consider *all* factors in the record. Of course, we express no opinion about the proper exercise of the discretion that the BIA undoubtedly has; we only require it to exercise its discretion properly.

Petition GRANTED in part, DENIED in part, and DISMISSED in part.