56 F.3d 75
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Nhia Bee VUE, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-70783.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1995.
Decided May 23, 1995.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, I&NS No. Apz-klc-pcn:
 INS
 REVIEW GRANTED; REVERSED.
 Before: WALLACE, Chief Judge, HUG, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Nhia Bee Vue, a native and citizen of Laos, petitions for reversal of the Board of Immigration Appeals' ("BIA") order affirming the immigration judge's ("IJ") decision finding Vue deportable because he was convicted of a controlled substance offense. The IJ also denied Vue's application for withholding of deportation, 8 U.S.C. Sec. 1253(h), asylum, 8 U.S.C. Sec. 1158(a), waiver of deportation, 8 U.S.C. Sec. 1182(c), and voluntary departure, 8 U.S.C. Sec. 1254(e).
 
 FACTS
 
 3
 Vue entered the United States in 1980, at the age of 35, and became a permanent resident of the United States on July 9, 1982. Vue is a Hmong male. The Hmong are an ethnic group in Laos that was closely allied with the United States during the war in Indochina. During the war, Vue served as a Laotian guerilla working for the United States under the command of General Van Pau. After the victory of the Communist-dominated Pathet Lao in 1975, Vue, like many other Hmong, came to the United States and was granted political refugee status.
 
 
 4
 The parties have stipulated that Vue has both a "well-founded fear" of persecution and that there exists a "clear probability of persecution" if he is deported to Laos. Vue contends, and the INS does not dispute, that he will most likely be executed by the Laotian government because of his previous association and collaboration with the United States' Central Intelligence Agency.
 
 
 5
 Vue is considered to be a Hmong medicine man or shaman in the Laotian community. The evidence presented at Vue's deportation hearing established that most of the 2,500 Hmong in the San Diego area where Vue resides will not rely on Western medicine when they become ill and will, instead, call a shaman to perform spiritual ceremonies to cure their illnesses. Most of the Hmong community knows Vue is a shaman and would call him if they became sick. Opium is traditionally used in such spiritual ceremonies to treat stomach disorders and "bad spirits" and was commonly grown by the Hmong mountain people. During these ceremonies, the shaman drinks the opium and then blows it on the sick person. In his ceremonies as a shaman, Vue would use opium himself before performing religious chants to work "magic" and "heal sickness." The Hmong do not use opium for recreational purposes and look disfavorably upon those who do. Vue did not give opium to others and did not use the drug unless performing the shaman ceremonies.
 
 
 6
 In 1986, Vue was convicted of importing 412 grams of opium, and of possession of opium with intent to distribute. Vue was sentenced to three years in prison, but was released after serving 18 months. In 1987, the INS issued an order to show cause why Vue should not be deported because of his conviction. Vue conceded deportability and applied for relief under sections 212(c) (waiver of excludability), 208 (asylum), 244(e) (voluntary departure), and 243 (withholding of deportation) of the Immigration and Nationality Act ("INA"). See 8 U.S.C. Secs. 1182(c); 1158(a); 1254(e); and 1253(h) respectively. In 1988, Vue was discovered to be in possession of trace amounts of opium. He pled guilty to opium possession and was sentenced to 120 days in county jail and probation. In 1989, the IJ denied all of Vue's applications for relief, finding that Vue's criminal conviction was sufficiently serious to offset any equities in his favor. The BIA upheld the IJ's decision, and Vue filed this timely petition for review.
 
 DISCUSSION
 
 7
 A. Asylum, Withholding of Deportation, and Voluntary Departure:
 
 
 8
 Because Vue has been convicted of an aggravated felony under 8 U.S.C. Secs. 1158(d) and 1253(h)(2)(B), he is statutorily ineligible to apply for asylum and withholding of deportation. Feroz v. INS, 22 F.3d 225, 226-27 (9th Cir. 1994). Therefore, we affirm the BIA's decision to uphold the IJ's denial of relief under these sections. Vue does not argue that the IJ erred in denying voluntary departure and, accordingly, has waived that claim.
 
 
 9
 B. Waiver of Excludability under Section 212(c):
 
 
 10
 Where, as in this case, the BIA clearly incorporates an IJ's opinion into its decision, then the IJ's statement of reasons is treated as the BIA's, and the IJ's decision is reviewed for an abuse of discretion. See Alaelua v. INS, 45 F.3d 1379, 1381-82 (9th Cir. 1995).
 
 Section 212(c) of the INA provides:
 
 11
 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.
 
 
 12
 8 U.S.C. Sec. 1182(c).
 
 
 13
 This provision is not limited to exclusion proceedings, but applies as well to deportation proceedings. Ayala-Chavez v. INS, 944 F.2d 638, 640 n.2 (9th Cir. 1991). "We have also held it applicable to deportation proceedings regardless of whether the resident ever left the United States." Id. In this case, it is undisputed that Vue is statutorily eligible for section 212(c) relief; the issue is whether the IJ properly exercised his discretion in denying this relief.
 
 
 14
 In determining whether an applicant for relief under section 212(c) meets the statutory requirements, the BIA must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf. See Rashtabadi v. INS, 23 F.3d 1562, 1570 (9th Cir. 1994). The BIA's failure to assess all relevant factors constitutes an abuse of discretion. Id. at 1570-71 (stating that BIA must "'evaluat[e] all of [the factors], assigning weight to each one separately and then to all of them cumulatively"') (quoting Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir. 1994)); see also Paredes-Urrestarazu v. INS, 36 F.3d 801, 807 (9th Cir. 1994) (holding that BIA must "demonstrate that it considered all appropriate factors" in determining whether or not to grant the waiver). Moreover, in making a discretionary decision under section 212(c), the agency must indicate "how it weighed the factors involved" and "how it arrived at its conclusion." Yepes-Prado v. INS, 10 F.3d 1363, 1370 (9th Cir. 1994) (quoting Dragon v. INS, 748 F.2d 1304, 1307 (9th Cir. 1984)). This court will not assume that the BIA considered factors it did not expressly mention. Mattis v. INS, 774 F.2d 965, 967 (9th Cir. 1985). Considering a particular factor in one discretionary determination, moreover, cannot be used as a basis for inferring that it was considered elsewhere. Campos-Granillo, 12 F.3d at 853.
 
 
 15
 Several factors are relevant to considering whether to grant a section 212(c) petition. Favorable considerations include family ties within the United States, length of residence in the United States, entry into the United States at a young age, evidence of hardship to the applicant and his or her family if deportation occurs, service in the United States military, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other favorable character evidence. See Matter of Marin, 16 I. & N. Dec. at 585.
 
 
 16
 Against these factors, the BIA must consider the nature and circumstances of the crime serving as the basis for deportation, additional significant violations of immigration laws, the nature, recentness and seriousness of the applicant's criminal record, and any other negative character evidence. Matter of Buscemi, 19 I. & N. Dec. 628, 633 (1988). The BIA requires that the equities be outstanding before it will grant relief under section 212(c) to an applicant who has been convicted of a serious drug offense or whose record reflects a pattern of serious criminal activity. Ayala-Chavez, 944 F.2d at 641. The applicant seeking relief has the burden of establishing his eligibility.
 
 
 17
 i-Hardship to Vue:
 
 
 18
 In considering whether deportation would impose severe hardship upon Vue, the IJ acknowledged that "communist authorities in Laos have a clear memory for former enemies and for that reason, any member of the Hmong tribe returning to Laos today would be in danger of persecution." We find this consideration of hardship to be inadequate. Although the IJ noted that Vue "came to the United States as a refugee, a member of an oppressed ethnic minority from Laos," the IJ failed to give full consideration to the hardship Vue will face if deported.
 
 
 19
 In establishing hardship as an equity, a section 212(c) applicant may not attempt to adjudicate whether he has a well-founded fear or a clear probability of persecution in his home country. See Matter of D-, Interim Decision 3236 (BIA 1994). An alien may, nevertheless, present as evidence of hardship the general conditions in his homeland and any such "evidence of hardship will be considered." Id. (citing Matter of Marin, 16 I. & N. Dec. 581 (BIA 1978)). Death or the likelihood of death upon deportation is a hardship that needs to be considered as part of a section 212(c) application. See Bastanipour v. INS, 980 F.2d 1129, 1134 (7th Cir. 1992).
 
 
 20
 In the present case, Vue did not attempt to adjudicate whether he had a well-founded fear of persecution. The INS had already stipulated that Vue would most likely be persecuted in Laos and, therefore, that issue was not in dispute. The IJ's consideration did not fairly encompass Vue's uncontested assertion that he will most likely be put to death if deported to Laos. Given the "unusually harsh" consequences accompanying Vue's deportation, the IJ should have given explicit and deliberate consideration to this factor when weighing the equities in Vue's favor. Because the IJ failed to consider a relevant factor when determining whether Vue merited relief under section 212(c), the BIA could not properly rely on the IJ's findings and conclusions. See Rashtabadi, 23 F.3d at 1570-71; Yepes-Prado, 10 F.3d at 1370. We also conclude that the BIA's conclusory assertion that "the weight of the adverse factors has not been overcome by the equities" does not adequately explain how the BIA arrived at its decision. Id. Accordingly, we find that the BIA has abused its discretion by affirming the IJ's decision without demonstrating that it considered all of the relevant factors. See Paredes-Urrestarazu, 36 F.3d at 807; Alaelua, 45 F.3d at 1382.
 
 
 21
 ii-Hardship to Vue's family:
 
 
 22
 Similarly, we conclude that the IJ and BIA failed to fully consider the hardship to Vue's family members if he is deported to Laos. The IJ noted that hardship to family members is an equitable factor to be considered, but did not actually engage in a reasoned consideration of this factor. Merely noting the relevant factors is insufficient to evince consideration of those factors. See Yepes-Prado, 10 F.3d at 1366, 1370. Vue's family in this country consists of his wife, seven children, two of whom are United States citizens, his mother, and three siblings. Although the evidence does not support a finding that the family would suffer economic hardship if Vue is deported, there can be no doubt that Vue's family would suffer severe emotional and psychological hardship in light of the uncontested fact that he will most surely be persecuted and probably even executed in Laos.
 
 
 23
 iii-Circumstances of Vue's Conviction:
 
 
 24
 In deportation hearings involving a narcotics conviction "the agency must examine facts surrounding the precise offense and evaluate those circumstances before determining the weight to be afforded a particular drug conviction. Yepes-Prado, 10 F.3d at 1371. Thus, "the agency must consider the conviction on an individual basis rather than in a blanket fashion." Id. The IJ must then "offer a reasoned explanation of why that conviction outweighs the equities in the petitioner's favor." Id. at 1372.
 
 
 25
 In the present case, the IJ found credible Vue's assertion that he used opium strictly for religious purposes. The IJ stated: "I recognize that opium has been used by the Hmong people for many generations, not as a recreation device but in a medical and religious sense." Nevertheless, the IJ concluded that "in view of the inherent adverse effect that opium can have on individual members of our society" Vue's convictions constituted a "per se particularly serious crime." Thus, rather than considering the particular circumstances of Vue's conviction, the IJ determined that the general nature of the crime itself outweighed any equities in Vue's favor. This consideration is inadequate to deny relief under section 212(c). See Yepes-Prado, 10 F.3d at 1371, n.17 (holding that discussion of harmful and pernicious effects of drugs in general is not a "particularized consideration" of the petitioner's conduct as required by law).
 
 
 26
 In the present case, the IJ was presented with and found credible many facts that mitigated against giving overriding weight to Vue's conviction. For example, although the conviction was for possession with intent to distribute, the IJ found credible Vue's claim that he used opium only for religious ceremonies and did not distribute the drug to others. The IJ further recognized the traditional use of opium among Hmong shaman. Although traditional use in another country does not wholly justify use of the drug in this country, the fact remains that Vue is not a garden variety opium user or dealer, a fact that would mitigate against deportation where the deportee faces certain persecution and probable death upon his return. At his hearing, Vue testified that he now understands that using opium is illegal in the United States and has promised to refrain from doing so in the future. He has also filed a petition to reopen with the BIA in which he seeks to prove that he has not used opium for five years and is, therefore, rehabilitated. (The BIA may consider consolidating Vue's petition to reopen with the present action.) These are the kind of individual particularized inquiries required when balancing the equities in a section 212(c) petition for relief. A mere rote recital of the egregious nature of drug offenses in general is insufficient. See id.
 
 
 27
 Accordingly, we conclude the IJ failed to give adequate particularized consideration to the circumstances surrounding Vue's conviction. We further hold that the BIA likewise failed to engage in a particularized analysis of Vue's conviction when adopting the IJ's findings. To the contrary, the BIA opinion states in conclusory fashion that "if respondent had not committed serious drug offenses in this country, he would have been allowed to remain here." This analysis suffers from the same shortcoming as that conducted by the IJ and accordingly constitutes an abuse of discretion.
 
 
 28
 Adequate consideration of hardship and other equities is necessary before an IJ may properly deny a section 212(c) petition. We require the IJ to state with particularity the reasoning used in reaching a particular conclusion. See Yepes-Prado, 10 F.3d at 1370. Articulating the rationale for the IJ's finding serves two purposes: first, it establishes a record for appeal; second, and of even more importance, it requires the IJ to specifically reflect on the individual's circumstances before exercising his or her discretion. This is particularly important in a case where, as here, all parties agree the deportee will be persecuted and quite likely executed upon his return to Laos. In such grave circumstances, the IJ should carefully consider all equities and articulate with particularity the rationale used to reach a conclusion. Failure to do so is an abuse of discretion that we cannot permit to stand.
 
 CONCLUSION
 
 29
 We find that the IJ and BIA gave inadequate consideration to the equities relevant to Vue's section 212(c) petition. Accordingly, we GRANT Vue's petition for review, and the decision of the BIA affirming the IJ's decision to deny Vue's petition is REVERSED and REMANDED.
 
 WALLACE, Chief Judge, dissenting:
 
 30
 I agree with the conclusion, but not the reasoning, of the majority that we should not review the Board's decision to deny asylum and withholding of deportation. I also agree that Vue has waived any claim that the Board erred by denying voluntary departure. But that is where my agreement with the majority ends. I can concur neither in the majority analysis of Vue's various contentions nor in the decision to grant the petition. Therefore, I respectfully dissent.
 
 
 31
 The majority concludes that the Board abused its discretion by failing to take into consideration all of the relevant factors, including the likely hardship to Vue and his family, the circumstances of his conviction, and the possibility that Vue would be killed if returned to Laos.
 
 
 32
 The Board adequately considered the circumstances surrounding Vue's crimes. Yepes-Prado v. INS, 10 F.3d 1363 (9th Cir. 1993), holds that the Board cannot just deny discretionary relief because the petitioner has been convicted of a drug offense. Rather, the Board must "consider the relative seriousness of the particular conduct of which the petitioner was convicted." Id. at 1371. The Board's decision satisfies this requirement. Because the Board incorporated the immigration judge's (IJ) decision into its decision, the IJ's statements of reasons is treated as the Board's. Alaelua v. INS, 45 F.3d 1379, 1381-82 (9th Cir. 1995). Although the IJ did talk about the seriousness of drug crimes in general, he adequately considered both the mitigating and the aggravating circumstances concerning Vue's particular crimes. The IJ stated that opium has been used by the Hmong for generations not for recreation but for medical and religious purposes. He also referred to Vue's testimony that he only used opium in small quantities and only used it himself. Earlier, however, he discredited the rest of Vue's testimony concerning his drug use. Thus, he considered all of the facts in Vue's favor. The IJ then specifically described the aggravating circumstances surrounding Vue's convictions in great detail, stating:
 
 
 33
 On the negative side, there is the criminal record. The respondent has been convicted in federal court of 5 separate offenses involving opium. The quantity of drug was quite large. As stated above, I am not convinced of his protestation of innocence. Also significant is the fact that, in my opinion, the respondent has not demonstrated genuine rehabilitation and reformation. Mr. Yang testified that he has counseled the respondent concerning opium and will continue to do so in the future. Yang's advise [sic], however, has been less than effective because the respondent, after being released from federal prison after the first opium conviction, went back to using the substance and suffered a state conviction. ... [I]t would appear that he violated federal probation when he was convicted on the state charge.
 
 
 34
 The IJ went on to acknowledge that "opium has been used by the Hmong people for many generations, not as a recreational device but in a medical and religious sense." The IJ explained, however, that Vue was on notice that drug use was illegal in this country because he signed a written declaration concerning drugs upon entry to the United States, that his religion does not require the use of opium, and that Vue was found with opium even after he was served with an Order to Show Cause initiating deportation proceedings against him, indicating that Vue would not stop using opium even though he knew that it might result in his deportation. As the IJ explained:
 
 
 35
 In addition, it is obvious that judging from his own testimony, the respondent used opium in this country only in small quantities, administering it to himself. It seems from the testimony of the respondent and his witness Yang that this was not a mandatory practice, but merely optional, even though opium has been traditionally employed. Thus, I find the religious argument not particularly convincing as I see no spiritual compulsion to use the substance in the United States. Also, it is important to point out that, at the time of his release from federal prison, the respondent was served with an Order to Show Cause, placing him under deportation proceedings. ... Thus, he was on actual notice that the Service hoped to expel him from this country based upon his involvement with opium. Undaunted, the respondent once more used this substance and suffered an arrest by San Diego police which lead [sic] to another narcotics conviction. ... In my opinion, this does not speak well for his alleged reformation and rehabilitation. To put it other words, his verbal assurances that he will "never do it again" dwindle in significance when contrasted with his misconduct.
 
 
 36
 The Board clearly gave adequate consideration to the specific circumstances of Vue's crimes. The majority's characterization of the IJ's discussion of Vue's crimes as a "mere rote recital of the egregious nature of drug offenses in general" maj. at 11, is disingenuous.
 
 
 37
 The issue of whether the Board considered the hardship to Vue's family is a closer question. The IJ did point out Vue's "strong family ties to this country as evidenced by his immigrant wife and 7 children, all legally here." The IJ also discussed Vue's family while discussing the withholding of deportation issue. While the IJ never specifically mentioned the emotional hardship to Vue's family if Vue were killed upon his return to Laos, an IJ cannot be expected to dissect every relevant factor into its constituent parts. The IJ was clearly cognizant of Vue's family, and the potential hardship to them.
 
 
 38
 I also disagree with the majority's conclusion that the Board did not adequately take into consideration the possibility that Vue could be killed if returned to Laos. Near the beginning of his oral decision, the IJ explained that the INS has conceded that Vue's "life or freedom would be threatened" and stated that he will accept the stipulation and sees "no need to litigate these issues in this proceeding." Later the IJ states: "It would appear from the articles that the communist authorities in Laos have a clear memory for former enemies and for that reason, any member of the Hmong Tribe today would be in danger of persecution." The IJ was clearly aware of the harsh consequences that might result upon Vue's return to Laos. Because these issues were not contested, however, there was little reason for him to elaborate on them in great detail in his decision. Given that the IJ accepted the stipulation that Vue's "life or freedom would be threatened" and stated that there was therefore no need to litigate those issues further, these statements are sufficient to show that the IJ and the Board considered the harsh consequences possible upon Vue's return to Laos.
 
 
 39
 I conclude that the IJ's decision contains statements sufficient to demonstrate that the Board adequately considered all of the relevant factors in exercising its discretion, and that the Board therefore did not abuse its discretion. Therefore, the petition for review should be denied.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3