[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-14131
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 22, 2006
THOMAS K. KAHN
CLERK

BIA Nos. A95-551-271 & A95-551-272


IMELDA MARIA EFIE SUHARTI,
NANA SURYADI,
NICKHOLAS LOUISE,

                                                          Petitioners-Appellants,

versus

U.S. ATTORNEY GENERAL,

                                                          Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(June 22, 2006)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Lead petitioner Imelda Maria Efie Suharti, her husband Nana Suryadi, and

their minor son, all natives and citizens of Indonesia, petition for review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed the immigration judge's ("IJ") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). On appeal, Suharti argues that the BIA erred by adopting and affirming the IJ's denial of asylum based on Suharti's failure to demonstrate past persecution or a well-founded fear of future persecution, on a country-wide basis, based on religion (Christianity) or ethnicity (Chinese).[1] More specifically, Suharti contends that the BIA's review violated due process because the administrative record did not (and still does not) contain Suryadi's testimony, on which the IJ relied in finding that Suharti was not credible. After careful review, we dismiss the petition in part and deny the petition in part.

We "review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

---

[1]We are unpersuaded by Suharti's additional argument that, as a general matter, the BIA's summary affirmance of an IJ's decision violates due process. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1289 (11th Cir. 2003) (noting that "no entitlement to a full opinion by the BIA exists," and the fact that "a one-sentence order was entered is no evidence that the BIA member did not review the facts" of the case (quotation omitted)).

Because we find that Suharti's has not established a case for asylum, we do not consider whether she satisfied the higher standard for withholding of removal under the INA or CAT relief. See Forgue v. Att'y Gen., 401 F.3d 1282, 1288 n. 4 (11th Cir. 2005).

2

Here, the BIA stated that it adopted the IJ's decision "insofar as he [the IJ] found that the respondents failed their burdens of proof for asylum and withholding of removal under the [INA] and for protection under the [CAT]." If the BIA adopts the IJ's opinion, then that decision is reviewed as well. Najjar, 257 F.3d at 1284. To the extent that the BIA's decision was based on a legal determination, our review is de novo. See D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004).

We review an IJ's factual findings, such as credibility determinations, under the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citations omitted). Under this "highly deferential" test, we will "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation omitted). "The trier of fact must determine credibility, and this court may not substitute its judgment for that of the [IJ] with respect to credibility findings." D-Muhumed, 388 F.3d at 818.

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue, 401 F.3d at 1287 (citations omitted) (emphasis added). Although we have not directly addressed the issue, both the Third and the Ninth Circuits have held that an adverse

3

credibility finding must go to the "heart of the asylum claim," and not be based on minor discrepancies, inconsistencies, and omissions. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); Akinmade v. INS, 196 F.3d 951, 954 (9th Cir. 1999). Moreover, an adverse credibility determination does not alleviate the IJ's duty to consider all of an asylum applicant's evidence. Forgue, 401 F.3d at 1287.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is any person who is unwilling to return to his home country or to avail himself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ." 8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. See Najjar, 257 F.3d at 1284; 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" of future persecution. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). A showing of past persecution creates a presumption of a "well-founded fear" and shifts the burden to the government to show by a preponderance of the evidence

4

(1) a fundamental change in circumstance such that Suharti no longer has a well-founded fear of persecution, or (2) that Suharti could avoid future persecution by relocating to another part of Indonesia and it would be reasonable to expect her to do so. See 8 C.F.R. §§ 208.13(b)(1)(i)(A), (B); 208.16(b)(2), (3). If she cannot show past persecution, then a petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation omitted).

On June 27, 2003, after an evidentiary hearing on Suharti's petition, the IJ summarized the testimony and evidence he considered as follows:

> The evidence in this case consisted of five exhibits and the testimony of the respondent and her husband. In essence, they both testified that they were born and raised in Indonesia; that they were married and they have a son. She testified that they were married in a family ceremony December 6, 2000, and reception [was held] at her house in Surabaja that was officiated by her uncle and attended by about 300 people. And then on November 9 of 2001, they had a church ceremony at a church in Jakarta, and then they received their marriage certificate in January 2002. And this marriage certificate indicates that the church ceremony occurred November 9, 2001.
>
> Her husband testified that they were married in a church on November 11, 2000 in Jakarta, and that they had a civil ceremony at

5

an office in Surabaja on December 6, 2001, which was attended by approximately nine or ten people, and there were no other ceremonies. Although, on cross-examination, he did indicate that there was a reception held at his wife's home in Surabaja, and that occurred between the date they were married in church in November of 2000 and when they were married in a civil ceremony in December of 2001.

He testified that his shop burned during the rioting of May 15th 1998, when university students were demonstrating in the street, requesting that the president of Indonesia step down. He indicated that there were some who took the opportunity to start burning stores, and that his store was not specifically singled out but was one of many stores burned on that occasion.

She testified concerning that incident as well. She also testified that when she was 16 and attending school, which would have been about 1989, that one day on her way home from school, she was attacked by two men and that one of them burned her face with a cigarette and that they touched her breast, and that she ran back to the school where her father was called. And he reported this to the police, but they were unable to do anything.

In addition, she indicated that [on] July 7, 2001, while she was out shopping, two individuals, one in front of her and one behind her, tried to snatch her purse. When she would not let go, the individual said to her let go, let go, and then pushed her down. And as she fell, he took her purse. And the fall apparently caused her water to break and she went into premature labor and had a cesarean section the next day.

Additionally, she indicated that in December of 2001, while her mother was outside of their house, two individuals on a motorcycle drove by, grabbed her mother's necklace, which broke [and] fell to the ground. So one of the individuals got off the motorcycle and grabbed the necklace off the ground, and while he was off the motorcycle, also grabbed her mother's purse.

6

Her claim for asylum is based upon past persecution, fear of continuing persecution on account of their religion being Christian[ity] and their ethnicity being Chinese in Indonesia.

After recounting the foregoing evidence, the IJ denied asylum, enumerating two reasons for his decision. First, the IJ made an adverse credibility finding, noting that he had taken into account not only the substance of Suharti's and Suryadi's testimony, but also the demeanor of the petitioners, and the "rationality, internal consistency and inherent persuasiveness of their testimony." The IJ highlighted that, other than the more general background information about conditions in Indonesia, there had been no corroborating evidence presented as to the specific incidents detailed during Suharti's testimony. And it is clear that the IJ was troubled by what he described as "significant discrepancies" between the testimony of the two petitioners concerning their wedding. The IJ observed that "[o]ne of the most significant events in the life of a person is when they get married, and it is something one remembers."

Second, after the IJ made the foregoing adverse credibility determination, which formed the primary reason for denying the petition, the IJ also found that even if he accepted what Suharti said as true, she still had not met her burden to establish past persecution because the incidents she described were unrelated to a statutorily protected ground. Again, these incidents were: (1) in 1989, when Suharti was 16, she was attacked by two men who burned her face with a cigarette

7

and touched her breast; (2) on July 7, 2001, while she was out shopping, her purse was snatched and, as a result of the incident, she went into premature labor; and (3) in December of 2001, two individuals on a motorcycle drove by Suharti's house and grabbed her mother's necklace off of her neck and stole her mother's purse. The IJ characterized these incidents as "random crimes of opportunity" and deemed them insufficient to show past persecution connected to a statutorily protected basis.

Moreover, the IJ found that Suharti had not established a well-founded fear of future persecution. This determination, like the findings on past persecution, was based both on an adverse credibility finding and a finding that Suharti had not met her burden to show that a reasonable person in her circumstances would fear future persecution based on a statutorily protected ground.

Suharti appealed the IJ's decision to the BIA, arguing that the IJ erred by making an adverse credibility finding because her testimony was not inconsistent with Suryadi's testimony. She contended that in Indonesia, wedding dates and anniversaries are not celebrated in the same way as they are in the United States, and therefore, it was reasonable for she and Suryadi not to remember the exact dates of their wedding ceremonies and the related celebrations. The BIA dismissed her appeal, stating that it adopted and affirmed the IJ's decision "insofar as he found that the respondents failed to meet their burdens of proof for asylum and

8

withholding of removal under the [INA] and for protection under the [CAT]." Notably, at <u>no</u> point in the BIA proceedings did Suharti raise the primary claim she makes here: that without a transcript of Suryadi's testimony, the BIA's review of the IJ's decision violated due process.

It is undisputed that the record does not include a transcript of Suryadi's testimony. Suharti argues that the BIA erred by affirming the denial of asylum based on the adverse credibility finding because the administrative record is missing a transcript which was crucial to the IJ's adverse credibility determination. She argues that we must remand this matter for further proceedings. We disagree.

We are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." <u>Cadet v. Bulger</u>, 377 F.3d 1173, 1179 (11th Cir. 2004) (quotation omitted). We review our subject matter jurisdiction <u>de</u> <u>novo</u>. <u>Resendiz-Alcaraz v. U.S. Att'y Gen.</u>, 383 F.3d 1262, 1266 (11th Cir. 2004). In immigration cases, we may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). It is now well-settled that § 1252(d)(1)'s exhaustion requirement is jurisdictional, so we lack jurisdiction to consider claims that could have been, but were not, asserted in the BIA. <u>See</u> <u>Fernandez-Bernal v. U.S. Att'y Gen.</u>, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (holding that because of § 1251(d)(1) we lack

9

jurisdiction to review a claim the petitioner does not raise in his appeal to the BIA); Galindo-Del Valle v. Att'y Gen., 213 F.3d 594, 599 (11th Cir. 2000) (same).

Constitutional challenges and some due process claims, however, do not require exhaustion because the BIA does not have the authority to adjudicate those claims. Sundar v. INS, 328 F.3d 1320, 1325 (11th Cir. 2003). However, where the BIA can provide a remedy to the constitutional claim, "the exhaustion requirement applies with full force." Id. (holding that an alien should have exhausted his due process claim that the IJ's and BIA's application of an immigration statute violated the constitution, because "[i]t was within the BIA's authority to reconsider and change its decision").

Here, Suharti argues that the BIA's decision violated due process because the administrative record did not contain Suryadi's testimony, and therefore, the BIA could not fully assess the IJ's adverse credibility determination. Suharti failed to raise this claim in the BIA, and thereby "deprived [the BIA] of the opportunity to discover and correct [its] own error [ ]." Id. (internal quotation marks and citation omitted). "Preventing petitioners from doing that is what the exhaustion requirement is all about." Id. at 1325-26 (citing Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("[A] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process.") (internal marks omitted)).

10

Because Suharti did not raise this claim before the BIA, we lack jurisdiction to consider her argument concerning the missing transcript, and accordingly, dismiss the petition as to that claim.

The fact of the missing transcript does not preclude our review of the asylum decision because, separate and apart from the adverse credibility determination, the IJ provided an alternative reason for denying asylum, which we find is supported by substantial evidence. As for past persecution on account of a statutorily protected ground, in addition to finding Suharti not credible, the IJ also found that, even if he accepted all of the testimony at the hearing as true, Suharti still failed to show that any persecution she experienced was premised upon a protected ground. Persecution is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation," and "mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and internal quotation marks omitted).

The IJ concluded that Suharti described isolated incidents of verbal intimidation and acts of random violence. In 1989, when she was 16, two men approached her while she was walking home from school. They touched her breast and burned her face with a cigarette, but then left her alone when she ran back to her school to report the incident. In July 2002, she was robbed, and during the robbery she was pushed and her water broke. From our review of the transcript of

11

her testimony, there is <u>no</u> indication that anything relating to Suharti's religion or ethnicity was said or transpired during this attack. Finally, when her mother was robbed of her necklace and purse while standing in front of Suharti's house, again, we can find no testimony suggesting that this crime was related to, or caused by, Suharti's religion or ethnicity. As for the burning and looting of her store in Jakarta -- during this incident, Suharti was not in the country -- Suharti's explanation on her asylum application and testimony during the evidentiary hearing did not unequivocally indicate that the incident had to do with her ethnicity or religion, although she briefly mentioned she had heard that the looters got <u>more</u> upset when they saw a crucifix in the window of the store. That incident, by itself, does not establish past persecution sufficient to warrant granting her asylum.

We also note Suharti testified that, prior to coming to the United States, she left Indonesia and went to Taiwan on numerous occasions. But each time she left, despite the fact that the incidents she alleged in support of her claim of persecution preceded her departure and thus, according to her argument in support of asylum, constituted past persecution, she returned to Indonesia. On this record, there was sufficient evidence to support the IJ's past-persecution findings and conclusion that the harassing incidents Suharti described, with virtually no connection to a statutorily protected basis, were not sufficient to constitute past persecution.

As for <u>future</u> persecution, because Suharti failed to meet her burden of

establishing past persecution, the burden of proof did not shift to the government. See generally 8 C.F.R. § 208.13(b)(1), (2), (3)(i).  Thus, the burden remained with Suharti to show a well-founded fear of future persecution.  See id.  Based on our review, we have found nothing in the record that compels us to find that a reasonable factfinder would have to conclude that the requisite fear of future persecution, which must be based on one of the five statutorily enumerated grounds, exists.

Because we lack jurisdiction over Suharti's due process claim concerning the transcript of Suryadi's testimony, and substantial evidence supports the denial of asylum, we dismiss in part and deny in part the petition for review.

**PETITION DISMISSED IN PART AND DENIED IN PART.**