456 F.2d 1092
 Jiwan SINGH, Plaintiff-Appellee,
v.
IMMIGRATION AND NATURALIZATION SERVICE and Cecil W.
Fullilove, District Director, Immigration and
Naturalization Service, San Francisco
District, Defendant-Appellant.
 No. 26512.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 24, 1972.
Rehearing Denied April 13, 1972.
 
 1
 John L. Murphy (argued) Bowie, Md., Murray R. Stein, Attys., U. S. Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., David R. Urdan, Asst. U. S. Atty., San Francisco, Cal., for defendant-appellant; Will Wilson, Asst. Atty. Gen., Paul C. Summitt, Atty., U. S. Dept. of Justice, Washington, D. C., of counsel.
 
 
 2
 Joseph Hertogs (argued), San Francisco, Cal., for plaintiff-appellee.
 
 
 3
 Before DUNIWAY and TRASK, Circuit Judges, and PREGERSON,* District Judge.
 
 PREGERSON, District Judge:
 
 4
 This case presents a perplexing question of statutory construction. The sole issue before this Court is the proper interpretation of a statute of limitations provision in the Immigration and Nationality Act of 1952, as amended [hereinafter, "the Act"], 8 U.S.C. Secs. 1101 et seq.
 
 
 5
 Jiwan Singh is a citizen of India who entered the United States as a nonimmigrant student only January 10, 1959.[1] On July 24, 1963, he married a United States citizen, and thereafter he applied to the Immigration and Naturalization Service [hereinafter, "the Service"] for adjustment of his status to that of an alien admitted to the United States for permanent residence. The Service, acting pursuant to Sec. 245(a) of the Act, 8 U.S.C. Sec. 1255(a), granted the adjustment of status on October 18, 1963.[2]
 
 
 6
 Section 246(a) of the Act, 8 U.S.C. Sec. 1256(a), provides, in part,
 
 
 7
 "If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 245 or 249 of this Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person * * * and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made."
 
 
 8
 On September 12, 1968, within five years after the Service had adjusted Singh's status, the Service's District Director in San Francisco mailed to Singh a notice of his intention to rescind the adjustment of Singh's status pursuant to Sec. 246(a).[3] The notice alleged that Singh and his spouse had never cohabited as husband and wife; that Singh had contracted the marriage for the sole purpose of obtaining permanent residence status; and that, as a result, Singh's marriage was not valid for the purpose of obtaining an adjustment of his status.[4] Singh received the notice on September 19, 1968, which was still within the five-year period specified in Sec. 246(a), and on October 11, 1968, which was also within the five-year period, Singh denied the District Director's allegations and requested a hearing before a special inquiry officer of the Service.[5] The five-year period expired on October 18, 1968.
 
 
 9
 At a hearing held on December 6, 1968, the special inquiry officer, upon Singh's motion, terminated the rescission proceeding on the grounds that it was barred by the five-year limitation provision. The special inquiry officer interpreted Sec. 246(a) to require a hearing before a special inquiry officer and a decision by that officer within the five-year period. The Service appealed to the Board of Immigration Appeals,[6] which sustained the Service's appeal on December 19, 1969. The Board held that service of a notice of intention to rescind within the five-year period tolled the statute of limitations.
 
 
 10
 On February 16, 1970, Singh brought suit in the United States District Court for the Northern District of California to review the decision of the Board.[7] The District Court granted summary judgment in favor of Singh, reversing the Board's decision, on May 27, 1970, 313 F.Supp. 532. The Service promptly appealed to this Court. We find the Service's arguments more persuasive than Singh's and, accordingly, reverse the District Court's decision.
 
 
 11
 Singh urges this Court to follow Quintana v. Holland, 255 F.2d 161 (3rd Cir. 1958), in which the Court of Appeals for the Third Circuit held that service of a notice of intention to rescind did not suffice to toll the statute of limitations. The Court reasoned that a district director's conclusion that an alien had apparently not been eligible for an adjustment of his status was but a preliminary determination and did not meet the requirement of Sec. 246(a) that "it shall appear to the satisfaction of the Attorney General." Nothing could "appear to the satisfaction of the Attorney General," the Court reasoned, until after a formal hearing had been held.
 
 
 12
 The language of Sec. 246(a), however, does not compel the conclusion reached in Quintana. The section simply fails to specify precisely what action must be taken within the prescribed limitation period. The phrase, "shall rescind the action taken," can be read to require merely the institution of rescission proceedings by service of a notice just as easily as it can be read to require a final decision following a formal hearing. The language of Sec. 246(a), in short, does not preclude a tolling of the statute by the service of a notice, and it is not determinative of the issue before this Court.[8]
 
 
 13
 Subsequent changes in the regulations governing rescission, moreover, undermine the applicability of Quintana to the present case. The regulations in effect when Quintana was decided required, as do the present regulations, service by a district director of a notice of intent to rescind as the first step towards rescission.[9] In the event that the alien wished to contest the rescission, however, former Regulation 246.12(b) provided for a "personal appearance" or "interview" before an "immigration officer," rather than a "hearing" before a "special inquiry officer."[10] More important than these changes in terminology is the fact that under the old regulations the immigration officer did not make a decision after the personal appearance; he merely prepared a "report and recommendation." It was the district director who decided whether or not rescission was appropriate.[11] The same individual who initiated the rescission proceedings, in other words, decided the outcome of those proceedings. Therefore the Court in Quintana had to reckon with the distinct possibility that a district director, acting on the basis of mere suspicion, might toll Sec. 246(a) by service of a notice of intent to rescind and then delay the prosecution of the rescission proceedings so that his staff could complete its investigation-a possibility that would defeat the very purpose of a statute of limitations.[12]
 
 
 14
 Present regulations, however, have alleviated this threat. While prosecutorial duties are still delegated to the district director, the responsibility for deciding whether rescission is appropriate lies solely with an independent special inquiry officer.[13] If a district director tolls the running of the statute, he cannot prolong the proceedings indefinitely while his staff searches for evidence to support its suspicions. The special inquiry officer controls the pace of the rescission proceeding, much like a judge controls the pace of a lawsuit; he can, as a result, prevent any undue delay that would prejudice the rights of the alien whose adjustment of status is under challenge. See 8 C.F.R. Part 242, especially Secs. 242.8(a) and 242.13.
 
 
 15
 In addition, we fear that construing Sec. 246(a) to require that a hearing be held and a decision reached within the five-year period would encourage too hasty an adjudication of rescission cases. We fear that in proceedings commenced towards the end of the five-year period, special inquiry officers would be tempted to accelerate rescission proceedings so that a decision could be reached before expiration of the deadline-a practice that would hinder the ability of aliens whose adjustments of status are under challenge to respond to the Service's allegations. We believe, in short, that permitting service of a notice of intent to rescind to toll Sec. 246(a) would serve the interests of aliens whose adjustments of status are challenged better than would the construction championed by Singh. The former construction should promote fair and impartial decisions reached after expeditious, but not hasty, adjudication. It should protect aliens from rushed proceedings conducted with an eye on the calendar; it should not, under the present regulations, promote the premature institution of rescission proceedings without substantial evidence.
 
 
 16
 Construing Sec. 246(a) to permit the commencement of rescission proceedings to toll the statute of limitations, moreover, is in line with ordinary criminal and civil statutes of limitations, which provide that the filing of an indictment or of a civil complaint tolls the running of the statute.[14] Unlike Sec. 246(a) the language of these statutes explicitly provides that commencement of an action shall suffice to toll the running of the statute of limitations. As discussed above, the actual language of Sec. 246(a) affords no hint as to what Congress' intention was. These statutes are noteworthy, therefore, because the prevalence of limitations provisions that operate in this manner suggests the wisdom of construing Sec. 246(a) to operate in a comparable manner-especially in light of the fact that the new regulations promulgated since Quintana prescribe formal rescission proceedings deliberately modeled after regular lawsuits. The present regulations explicitly provide, in fact, that "a proceeding shall be commenced by the service * * * of a notice of intent to rescind."[15]
 
 
 17
 Furthermore, the adoption of Singh's proposal would not even settle the issue of Sec. 246(a)'s meaning. Singh's argument hinges on the words, "appear to the satisfaction of the Attorney General." The decision of a special inquiry officer, however, is not final, even within the Department of Justice; it may be appealed to the Board of Immigration Appeals. See 8 C.F.R. Sec. 242.20. If we adopt Singh's construction of Sec. 246(a) today, tomorrow another alien will certainly ask us to hold that even a special inquiry officer's decision does not satisfy the statutory requirement and that a decision by the Board of Immigration Appeals is necessary. To hold that the Board must pass upon an alien's ineligibility within the prescribed five-year limitation period would be absurd in light of the prolonged litigation that is necessary before the Board can consider and decide a case. Yet the logic of Singh's argument would seem to compel that conclusion. We decline to construe Sec. 246(a) in that way.
 
 
 18
 The decision of the District Court is reversed, and the matter is remanded to the Immigration and Naturalization Service for further proceedings consistent herewith.
 
 
 
 *
 Honorable Harry Pregerson, United States District Court Judge for the Central District of California, sitting by designation
 
 
 [1]
 Section 221(a) of the Act, 8 U.S.C. Sec. 1201(a), authorizes the issuance of visas to aliens by United States consular officers. The section divides visas into two broad categories. Aliens who seek entry for certain specific reasons enumerated in Sec. 101(a) (15) of the Act, 8 U.S.C. Sec. 1101(a) (15)-e. g., study, business, tourism-must obtain nonimmigrant visas, which authorize the alien to enter the country and remain for a specified period of time, the precise duration of which depends on the purpose of the alien's visit. Other aliens must apply for immigrant visas, which authorize entry and permanent residence. The Act severely restricts the availability of immigrant visas. Act, Sec. 201(a), 8 U.S.C. Sec. 1151(a); see n. 2, infra
 
 
 [2]
 Ordinarily, an alien who wishes to reside permanently in the United States must appear before a consular officer, establish his eligibility for an immigrant visa, and after having obtained one, travel to the United States, See Act, Secs. 204, 221, 222, 8 U.S.C. Secs. 1154, 1201, 1202. Section 245(a), however, establishes a procedure pursuant to which an alien who has already entered the country as a nonimmigrant can secure an adjustment of his status to that of a permanent resident without actually leaving the United States, appearing before a consular officer, and then reentering the country with an immigrant visa. The applicant for adjustment of status must establish that he would be eligible for an immigrant visa if he were not already in the United States and that such a visa would be available to him. Act, Sec. 245(a), 8 U.S.C. Sec. 1255(a)
 The availability of immigrant visas-and, hence, of adjustments of status-is restricted: Sec. 201(a) of the Act, 8 U.S.C. Sec. 1151(a), authorizes the issuance of only a limited number of immigrant visas during any one year. Spouses of United States citizens, however, fall within an exception to this general framework; Sec. 201(b), 8 U.S.C. Sec. 1151(b), exempts them from the numerical limitations imposed by Sec. 201(a). A valid marriage to a United States citizen, therefore, ordinarily entitles an alien to immediate entry as an immigrant or to immediate adjustment of status.
 It should be pointed out that at the time Singh's status was adjusted, the limited number of immigrant visas available under Sec. 201(a) were distributed on the basis of a national origin quota system. Congress abolished that quota system in 1965, Pub.L. 89-236, and substituted a system of preferences based on skills and on familial ties to United States citizens and permanent residents. See Act, Sec. 203(a), 8 U.S.C. Sec. 1153(a). Under this new regime spouses of United States citizens are still exempt from Sec. 201(a)'s numerical limitations.
 
 
 [3]
 Section 103(a) of the Act, 8 U.S.C. Sec. 1103(a), authorizes the Attorney General to appoint employees of the Immigration and Naturalization Service and to delegate to them "any of the duties and powers imposed upon him" by the Act. The section also authorizes the Attorney General to promulgate such regulations "as he deems necessary for carrying out his authority" under the Act
 The regulations that govern rescission of adjustment of status provide, in part,
 "If it appears to a district director that a person residing in his district was not in fact eligible for the adjustment of status made in his case, a proceeding shall be commenced by the service upon such person of a notice of intention to rescind which shall inform him of the allegations upon which it is intended to rescind the adjustment of his status." 8 C.F.R. Sec. 246.1.
 
 
 [4]
 As required by Regulation 246.1, the notice also informed Singh that he could, within thirty days, submit a sworn answer setting forth reasons why the adjustment of his status should not be rescinded; that he could request a hearing before a special inquiry officer; and that he could, without expense to the government, be represented by counsel at the hearing
 
 
 [5]
 Under 8 C.F.R. Sec. 246.2 admission by the alien of the district director's allegations or failure to answer them within thirty days results in rescission of the adjustment of status. Regulation 246.3, on the other hand, provides that if the alien, within thirty days, files "an answer which contests or denies any allegation in the notice" or simply requests a hearing, "a hearing pursuant to Sec. 246.5 shall be conducted by a special inquiry officer." The procedures governing such hearings are set forth in Regulations 242.10, 242.11, 242.12, 242.13, 242.14(c), (d), and (e), and 242.15
 
 
 [6]
 The Board of Immigration Appeals is established by 8 C.F.R. Sec. 3.1(a), and its operations are governed by 8 C.F.R. Part 3. Appeals to the Board from the decisions of special inquiry officers in rescission proceedings are authorized by 8 C.F.R. Secs. 3.1(b) (8) and 246.7
 
 
 [7]
 Singh brought the suit under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, and the Administrative Procedure Act, 5 U.S.C. Secs. 701 et seq
 
 
 [8]
 Furthermore, Singh and the Service agree that the legislative history of Sec. 246(a) is equally "unenlightening." "Brief for the Appellant," p. 5, n. 4; "Appellee's Reply Brief," p. 3
 
 
 [9]
 8 C.F.R. Sec. 246.11(a), 19 F.R. 9179 (Dec. 24, 1954); cf. 8 C.F.R. Sec. 246.1, 28 F.R. 6737 (June 29, 1963). See, however, n. 15, infra
 
 
 [10]
 8 C.F.R. Sec. 246.12(b), 19 F.R. 9179 (Dec. 24, 1954); cf. 8 C.F.R. Sec. 246.3, 29 F.R. 13243 (Sept. 24, 1964). Under the former regulations evidence, including the testimony of witnesses, could be received at the personal appearances. Id
 
 
 [11]
 8 C.F.R. Sec. 246.12(b), 19 F.R. 9179 (Dec. 24, 1954); cf. 8 C.F.R. Sec. 246.6, 27 F.R. 10789 (Nov. 6, 1962)
 
 
 [12]
 The precise facts in Quintana vividly demonstrate this potential abuse. After the district director had served Quintana with a notice of intent to rescind, in which he alleged that Quintana had been ineligible for adjustment of his status because of membership in the Communist Party, the immigration officer to whom the case was assigned reported that the Service had failed to establish that charge. The district director subsequently reopened the case after the five-year period had elapsed and referred the matter to another immigration officer, who recommended rescission. The district director approved the recommendation. That these specific facts played an important role in the Third Circuit's decision in Quintana is demonstrated by the language with which the Court enunciated its conclusion:
 "We think that something appearing to an officer's 'satisfaction' means that he must have something more than a hunch about it, or even more than that he may be convinced in his own mind. We think it means a reasonable determination made in good faith after such investigation and hearing as is required. Here the Attorney General could have made no such determination by the end of the five-year period * * *. As of that time the only investigation had concluded negatively and the Service was engaged in seeking further evidence with which to convince an inquiry officer that the plaintiff had improperly secured his status." 255 F.2d at 164. [Emphasis added.]
 
 
 [13]
 The independence of special inquiry officers in deciding the issues presented to them is illustrated by the officer's decision in this case and was conceded by Singh's counsel at oral argument before this Court
 
 
 [14]
 See, e. g., 18 U.S.C. Sec. 3281 (prosecutions for capital offenses), Sec. 3282 (prosecutions for noncapital offenses); 15 U.S.C. Sec. 15b (private antitrust suits)
 
 
 [15]
 Changes in the language of the regulations governing the commencement of rescission proceedings demonstrate how deliberate is the resemblance between rescission proceedings and regular lawsuits. The former regulation, 8 C.F.R. Sec. 246.11, 19 F.R. 9179 (Dec. 24, 1954), made no mention of any proceeding at all. It provided in part,
 "If it appears to a district director that a person residing in his district was not in fact eligible for the adjustment of status made in his case, he shall cause a notice to be served on such person informing him of the grounds upon which it is intended to rescind the adjustment of status." [Emphasis added.]
 The present regulation, 8 C.F.R. Sec. 246.1, 28 F.R. 6737 (June 29, 1963), has a much more formal flavor. It provides, in part,
 "If it appears to a district director that a person residing in his district was not in fact eligible for the adjustment of status made in his case, a proceeding shall be commenced by the service upon such person of a notice of intention to rescind which shall inform him of the allegations upon which it is intended to rescind the adjustment of his status." [Emphasis added.]