**Rodolfo Monroy BARIA,**
**Plaintiff–Appellant,**

v.

**Janet RENO, Attorney General, United States Attorney General; Donald A. Radcliffe, District Director, Immigration & Naturalization Service, Defendants–Appellees.**

No. 94–16061.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1996.

Decided Sept. 5, 1996.

George K. Noguchi, Honolulu, Hawaii, for plaintiff-appellant.

Mary R. Osaka, United States Department of Justice, Honolulu, Hawaii, for defendants-appellees.

Before FLETCHER, D.W. NELSON and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Rodolfo Baria, a citizen of the Philippines, held the status of a permanent-resident alien. The Board of Immigration Appeals rescinded his status. He now appeals from the district court's dismissal on summary judgment, in a decision published at 849 F.Supp. 750, of his complaint challenging the rescission. We reverse and remand on procedural grounds.

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

### A. Baria's Entry and Marriage

Baria entered the U.S. at Honolulu on a nonimmigrant visa, apparently as part of a musical troupe, in June 1984. He was authorized to stay, with extensions of his visa, for a year. Shortly after coming to the U.S., Baria went to Las Vegas, where his sister and stepmother lived. Approximately two months after his arrival, Baria filed in Nevada for divorce from Anita Baria, his wife of 21 years. She lives in the Philippines, as do their three children. In December 1984, Baria moved to Hawai'i and shortly thereafter he met Bibiana Patoc, a widow with two sons. She is a naturalized U.S. citizen of Philippine birth. Shortly after they met, he moved in with her. Baria's divorce from Anita became final late in May 1985. On June 14, 1985, the day after his visa expired, Baria and Patoc married, and almost immediately Patoc applied for immediate-relative status for Baria. On September 20, 1985, the I.N.S. adjusted Baria's status to that of a permanent resident. In November 1986, Baria stopped living with Patoc. In March 1987, Patoc told the I.N.S. that Baria had left their residence and that Baria had married her in order to gain immigration benefits. In February 1988 Patoc filed for divorce.

### B. Initiation of Rescission Proceedings

On January 28, 1988, the I.N.S. issued a notice of intent to rescind its prior adjustment of Baria's status on the grounds that Baria's marriage to Patoc was not valid for immigration purposes. Rescission is autho-

rized by 8 U.S.C. § 1256 if, within five years of the adjustment of status, the Attorney General determines that "the person was not in fact eligible for such adjustment of status"; proceedings to rescind are governed by 8 C.F.R. §§ 246.1 to 246.9. On March 15, 1988 [1] Baria, through his attorney, responded to the notice with an affidavit, an unsworn statement, letters written by Patoc, and a statement from a family acquaintance. On May 16, 1988 the I.N.S. district director rescinded Baria's adjustment, ruling that the evidence submitted "do[es] not overcome all the reasons which were stated in [the] notice of intent".

The I.N.S. started deportation proceedings against Baria but terminated them because the district director concluded upon further review that Baria's answer to the notice of intent to rescind entitled Baria to a hearing under 8 C.F.R. § 246.3.

## C. Rescission Hearing and Appeal

In December 1988, a hearing was held at which documentary evidence was submitted and Patoc and Baria both testified. Baria alleges additional facts about the hearing that do not appear in the record. He alleges that at a point in which the hearing was off the record for a change of tapes, the immigration judge "indicated to Baria's counsel that he was going to rule on the case in Baria's favor and that it was not necessary for Baria's counsel to present any evidence or to question Baria" and that Baria's counsel therefore did not present a case but simply rested on his motion to terminate.

The immigration judge in fact ruled that the I.N.S. had not met its burden and termi-

nated the rescission proceeding. The I.N.S. appealed to the Board of Immigration Appeals, which sustained the appeal, reversed the immigration judge, and rescinded the grant to Baria of permanent-resident status.

## D. District Court Proceedings

Two months later, Baria filed a complaint for a declaratory judgment, mandamus, and injunctive relief in the district court challenging the Board's decision. On February 28, 1994, the government moved the court to consider submission of the case on the record; on 4 March the government moved to convert that motion into one for summary judgment. On April 13, Baria opposed considering the motion as one for summary judgment. On April 18, the court heard argument and ruled that the motion would be considered one for summary judgment; it then immediately heard argument on the summary judgment motion. On April 29, 1994 the court issued an order granting summary judgment to the government. Baria has timely appealed.

## JURISDICTION

■ Baria invoked the district court's jurisdiction under 8 U.S.C. § 1329,[2] 28 U.S.C. § 1331 (federal-question jurisdiction), and 28 U.S.C. §§ 2201–02 (the Declaratory Judgment Act); the district court ruled only that it had jurisdiction under the first of these heads. Baria invokes this court's jurisdiction under 28 U.S.C. § 1291 and 8 U.S.C. § 1105a(a).[3] Although neither party in its brief has contested the jurisdiction of either this court or the district court,[4] we have an

1. The recipient of a notice of intent to rescind an adjustment of status has 30 days to submit "an answer in writing under oath setting forth reasons why such rescission shall not be made" and to "request a hearing before a special inquiry officer in support of, or in lieu of[,] his written answer". 8 C.F.R. § 246.1 (1995). Baria apparently requested and was granted an extension of time in which to file his answer.

2. Section 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329, grants district courts jurisdiction over "all causes, civil and criminal, arising under any of the provisions of" Subchapter II of Chapter 12 of Title 8 of the U.S.Code; that subchapter encompasses the sections pursuant to

which Baria's status was adjusted and that adjustment was subsequently rescinded.

3. As the following discussion makes clear, this appeal is not within the court's jurisdiction under the latter section.

4. In the district court, the I.N.S. suggested, on the basis of precedent discussed below, that "the Ninth Circuit apparently considers that review of the rescission order along with the deportation order is more expedient than requiring the alien to pursue judicial review in each case separately".

independent obligation to satisfy ourselves as to the jurisdiction of both courts. *Benavidez v. Eu,* 34 F.3d 825, 830 (9th Cir.1994). Questions of subject-matter jurisdiction are reviewed *de novo.* *Galt G/S v. Hapag–Lloyd AG,* 60 F.3d 1370, 1373 (9th Cir.1995).

The posture of this case is somewhat unusual, as courts of appeals most often review rescission proceedings on a petition for review from the Board, not on appeal from the district court. Rescission is usually challenged as part of a petition for review of concurrent or subsequent deportation proceedings and 8 U.S.C. § 1105a provides that the courts of appeals have exclusive jurisdiction to review final orders of deportation. In *Waziri v. United States Immigration and Naturalization Service,* 392 F.2d 55, 57 (9th Cir.1968), this court held that where a petitioner has been ordered deported on the basis of an underlying order rescinding the petitioner's adjustment of status, "[t]he interdependency of the two orders requires that the [§ 1105a] power of review extend to the order rescinding" an adjustment of status. The court reaffirmed its *Waziri* holding in *Bachelier v. Immigration and Naturalization Service,* 625 F.2d 902, 904 (9th Cir.1980) and discussed it approvingly in *Chadha v. Immigration and Naturalization Service,* 634 F.2d 408, 412 (9th Cir.1980), *aff'd,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).[5] *See also Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1983) ("[T]he term 'final orders' in [§ 1105a] 'includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing.' ") (quoting *Chadha v. Immigration and Naturalization Service,* 634 F.2d at 412 (discussing *Waziri* )).

While *Waziri* allows this court to review underlying rescission proceedings upon a pe-

tition for review of a deportation order, this court has also held that it has no jurisdiction under § 1105a to consider a petition for review of a rescission order in the absence of a deportation order. *Kuh v. Immigration and Naturalization Service,* 758 F.2d 370, 371 (9th Cir.1985). This is because § 1105a(a) grants the courts of appeals exclusive judicial review only "of all final orders of deportation ... made ... pursuant to administrative proceedings under [8 U.S.C. § 1252(b) ]". The Supreme Court has construed this language narrowly, holding that "the judicial review provisions of [§ 1105a] embrace only those determinations made during a proceeding conducted under [§ 1252(b) ]". *Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968). The *Kuh* court pointed out that rescission orders, of course, are not "final orders of deportation", and they are made pursuant to 8 U.S.C. § 1256, not § 1252(b). 758 F.2d at 371. Thus, Baria could not have petitioned directly to this court for review of the order rescinding his permanent-resident status. *See also Bachelier v. Immigration and Naturalization Service,* 548 F.2d 1157, 1158 (5th Cir.1977) ("Even if rescission proceedings are 'in the nature' of deportation proceedings they are not 'final orders of deportation' as specified by [§ 1105a] for direct review."); *Chadha,* 634 F.2d at 412 (citing *Bachelier* and noting in dicta that a rescission decision is not immediately appealable under § 1105a).

Some language in *Waziri* might be read, however, to suggest that a district court does not have jurisdiction to entertain a challenge to a rescission order and that an alien whose status is rescinded cannot challenge that rescission until a deportation order is entered, allowing review in the court of appeals pursuant to § 1105a:

> *Gottesman* addressed only a rescission that occurred at the hands of the district director and that was not successfully brought to a hearing before an immigration judge. *See also Ali v. Reno,* 22 F.3d 442, 446–47 (2d Cir.1994) (no appeal allowed from I.N.S. district director's decision to rescind where alien has not, in response to notice of intent to rescind, properly filed either answer or request for hearing).

---

**5.** One circuit has held that "the decision of an INS district director to rescind the adjustment of an individual's residency status is not reviewable in a court of appeals". *Gottesman v. United States Immigration and Naturalization Service,* 33 F.3d 383, 386–87 (4th Cir.1994). This decision can be reconciled with *Waziri,* since in the latter case the court held that it could review a rescission that occurred before an immigration judge and that was affirmed by the Board, while

Certainly [§ 1105a's] objective of expediti[ng the deportation of undesirable aliens by preventing successive dilatory appeals to various federal courts] would be thwarted if this court approved perfunctorily the deportation order while the district court reviewed the crucial underlying rescission order, and afterward this court reviewed on appeal the determination of the district court.

392 F.2d at 57. The holding of *Waziri*, however, is not that a district court has no jurisdiction to review a rescission order but that a court of appeals does have jurisdiction to review a rescission order underlying a final deportation order that is before the court pursuant to its exclusive § 1105a jurisdiction. Moreover, reading *Waziri* as divesting the district court of jurisdiction to review rescission orders when no deportation order has been issued would present several problems.

First, such a reading is contrary to the grant of jurisdiction to the district courts in § 1329 over "all causes ... arising under" the immigration provisions of Title 8 and to the limited grant of jurisdiction to the courts of appeals in § 1105a to review final orders of deportation: "In situations to which the provisions of [§ 1105a(a) ] are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court." *Cheng Fan Kwok*, 392 U.S. at 210, 88 S.Ct. at 1973. *See also Jaa v. United States Immigration and Naturalization Service*, 779 F.2d 569, 571 (9th Cir.1986) (district court has jurisdiction to review determinations "ancillary to an application for permanent residency"); *Sadegh–Nobari v. Immigration and Naturalization Service*, 676 F.2d 1348, 1350 (10th Cir.1982) (denial of application for change of nonimmigrant classification under 8 U.S.C. § 1258, and denial of motion to reopen those proceedings, were not final orders of deportation or proceedings under § 1252(b), so jurisdiction to review the denials was in the district court, not the court of appeals).

Second, such a reading of *Waziri* would leave an alien without a remedy in the admittedly unusual case in which the Board ordered the rescission of the alien's permanent-resident status but the I.N.S. did not pursue deportation against the alien.

Finally, holding that a district court has no jurisdiction to hear a challenge to a rescission order would contradict several cases that have considered such challenges (albeit without mentioning the jurisdictional question). In at least three reported cases, this court, with no discussion of jurisdiction, reviewed district court decisions reviewing final Board action in rescission proceedings under § 1256. *Kim v. Meese*, 810 F.2d 1494, 1495–96 (9th Cir.1987); *Dabaghian v. Civiletti*, 607 F.2d 868, 869 (9th Cir.1979); *Singh v. Immigration and Naturalization Service*, 456 F.2d 1092, 1094 (9th Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972). The Second and Third Circuits have also decided such appeals. *Zaoutis v. Kiley*, 558 F.2d 1096, 1099 (2d Cir.1977); *Quintana v. Holland*, 255 F.2d 161 (3d Cir.1958) (decided under former rescission procedures and before courts of appeals were granted jurisdiction to review final orders of deportation).

■ We conclude that the district court had jurisdiction under 8 U.S.C. § 1329 to review the Board's decision and that this court has jurisdiction under 28 U.S.C. § 1291 to review the district court's decision.

## STANDARDS OF REVIEW

■ A district court's grant of summary judgment is reviewed *de novo*. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).

■ Not surprisingly, given the unusual posture of this case, little case law discusses the appropriate standards courts should apply in evaluating plaintiff's claims. Given that the courts of appeals regularly review rescission orders in considering petitions for review of final deportation orders under § 1105a, a district court, and a court of appeals on review, should apply the same standard when a rescission order is challenged directly. In considering a petition for review of a final order of deportation, the court of appeals determines "whether there is reasonable, substantial, and probative evidence in the record as a whole to support the [administrative] determination that the INS carried

its burden". *Paointhara v. Immigration and Naturalization Service*, 708 F.2d 472, 474 (9th Cir.1983), *as amended on denial of reh'g*, 721 F.2d 651; *see also Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 281–82, 87 S.Ct. 483, 485–86, 17 L.Ed.2d 362 (1966); *Yaldo v. Immigration and Naturalization Service*, 424 F.2d 501, 503 (6th Cir.1970) (applying standard in review of rescission order underlying deportation order).

■ In order to rescind Baria's adjustment of status, the I.N.S. had to prove by "clear, unequivocal, and convincing evidence", *Waziri*, 392 F.2d at 57; *see also Woodby*, 385 U.S. at 277, 284–86, 87 S.Ct. at 483, 487–88; *Kim*, 810 F.2d at 1496, that Baria did not intend to establish a life together with Patoc at the time the couple married. *Bark v. Immigration and Naturalization Service*, 511 F.2d 1200, 1201–02 (9th Cir.1975). Therefore, the district court and our court should review the record to determine whether substantial evidence supports the Board's conclusion that the I.N.S. met its burden that required it to adduce clear, unequivocal, and convincing evidence. "Substantial evidence" means more than a mere scintilla but less than a preponderance; it means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

## DISCUSSION

Baria argues that the district court erred in limiting its review of the Board's decision to the administrative record. He argues that the court should have allowed him to introduce evidence as to what the immigration judge allegedly said off the record, how that allegedly influenced Baria's counsel not to present a case, and what that case would have consisted of.

■ Because this is not a § 1105a petition for direct review of a final deportation order, neither we nor the district court are statutorily required to limit review to the administrative record as we would be were this such a petition. *See* 8 U.S.C. § 1105a(a)(4) ("[T]he petition shall be determined solely upon the administrative record upon which the deportation order is based."); *Fisher v. Immigration and Naturalization Service*, 79 F.3d 955, 963–64 (9th Cir.1996) (en banc). However, given Congress' intent that § 1105a expedite deportations by streamlining appeals, it would be anomalous for a district court to go outside the administrative record in reviewing a rescission order when a court of appeals cannot do so when examining a rescission in its review of the deportation order which it underlies. Thus, we conclude that the district court did not abuse its discretion in limiting its scope of review in this case to the administrative record.

■ Our decision in this regard is influenced in part by the fact that one reason for the district court not to consider Baria's arguments about the inadequacy of the administrative record was that Baria did not make those arguments before the Board and therefore failed to exhaust his administrative remedies. To the extent that the record might be inadequate because (1) Baria's counsel did not present a case due to the immigration judge's off-the-record announcement that he planned to rule in Baria's favor or (2) Baria's testimony was not given under oath, those inadequacies occurred at the hearing stage and the Board should have been given the opportunity on appeal to address those arguments. "Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter." *Vargas v. United States Department of Immigration and Naturalization*, 831 F.2d 906, 907–08 (9th Cir.1987). Baria's argument does not fit within the exhaustion rule's exception for "constitutional challenges to the Immigration and Naturalization Act and INS procedures". *Rashtabadi v. Immigration & Naturalization Service*, 23 F.3d 1562, 1567 (9th Cir.1994). Instead, Baria alleges the type of procedural errors which the Board has the authority to correct and which must therefore be raised first before the Board. *Id.; see also Liu v. Waters*, 55 F.3d 421, 425–26 (9th Cir.1995). Baria is not, however, without a forum for his arguments: he can still move the Board to

reopen or reconsider the matter. *See* 8 C.F.R. §§ 3.2, 3.8, 246.8.[6]

■ Even on the district court's review of the administrative record alone, it was error, Baria argues, for the district court to grant the government's "Motion to Amend 'Motion to Consider Submission on the Record' " and to proceed to consider the government's motion as one for summary judgment without allowing Baria ten days to respond, as Federal Rule of Civil Procedure 56(c) requires. Indeed, after hearing argument on the government's motion to convert its motion for submission on the record into a motion for summary judgment, the court granted the government's motion to convert and then immediately proceeded to oral argument on the government's summary-judgment motion:

> Well, let's ask the first question first. Is this a motion for summary judgment? I am going to look at this case as a submission for summary judgment so it becomes a summary judgment, in effect, a motion for summary judgment. So you're in a hearing now. In other words, I guess what I did was I granted the government's motion to amend the styling of its original pleading to one where the Court would consider it as a motion for summary judgment.
>
> Now that we know what kind of hearing we're in, let me give the movant the opportunity to present itself.

Indeed, at the end of the hearing, even the court appears to have remained uncertain as to the nature of the hearing: "Well, I'm going to take this matter under advisement and, first of all, to go through this maze of whether this is a summary judgment or any other kind of hearing . . ."

The government contributed to the confusion. First it simply moved for a determination that the evidence in the case would be only that contained in the administrative record. Were that determination made, ordinarily the parties would proceed to briefs and argument confined to the issues raised by the record. However, hard upon that motion, the government moved to convert the proceeding to one for summary judgment. What it intended to accomplish by the second motion is unclear.

While the district court limited its review in this case to the record of prior proceedings, that limitation does not negate the advocacy function of counsel, as appellate judges well know. Written briefs and oral arguments allow counsel to present competing views of what the record means and what conclusions can be—and have been—drawn from it. Baria's counsel in this case was denied the opportunity to fulfill this function when the district court required counsel to oppose the government's summary-judgment motion immediately after having decided that the government's motion was in fact one for summary judgment. The issue whether the I.N.S. had, on this record, sustained its burden before the immigration judge was not open and shut. The immigration judge himself thought it had not.

The procedure followed by the district court was at odds with Rule 56(c), which requires that a motion for summary judgment be served at least 10 days before the hearing on the motion. The purpose of that provision is "to permit the nonmoving party a reasonable and meaningful opportunity to challenge a motion for summary judgment". *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1516 (11th Cir.1990). Here, once the court decided to treat the government's motion as one for summary judgment, it brought into the case the "intimation of mortality [that arises] when summary judgment is at issue". *Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir.1979). The court therefore should have allowed Baria's counsel at least 10 days to respond before taking the motion under consideration.

Because the district court's procedure denied Baria the opportunity to present his arguments as to how the record demonstrates that the Board's decision was in error, we remand the case for further proceed-

---

**6.** To the extent that Baria's arguments might be read to allege ineffective assistance of counsel (since his current counsel was not his counsel before the immigration judge and the Board), we are also without jurisdiction to hear that claim because of his failure to exhaust by seeking reconsideration by the Board. *Liu*, 55 F.3d at 425–26.

ings before the district court. In light of this disposition, we decline to reach Baria's arguments on the merits of this question of substantial evidence.

## CONCLUSION

Jurisdiction over this case was proper in both the district court and in this court, and the district court did not err in limiting its review to the administrative record. However, because the district court failed to give Baria adequate notice that it would consider the government's motion as one for summary judgment and thus give sufficient opportunity to respond to the motion, we reverse the district court's grant of summary judgment and remand for further proceedings.

**REVERSED AND REMANDED.**