**Perlito Capili SULIT; Estella Gonzalez Sulit, Petitioners–Appellants,**

v.

**Thomas J. SCHILTGEN, District Director, Immigration and Naturalization Service, Respondent–Appellee.**

No. 98–15280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 24, 2000

Filed May 17, 2000

Bert M. Vega, Law Offices of Rodel E. Rodis, San Francisco, California, for the petitioners.

Anh-Thu P. Mai (argued), Hugh G. Mullane (on the brief), United States Department of Justice, Washington, D.C., for the respondent.

Before: FLETCHER, HAWKINS and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Perlito Capili Sulit and Estella Gonzales Sulit, natives and citizens of the Philippines, appeal the district court's denial of their complaint for declaratory and injunctive relief and petition for writ of habeas corpus to prevent their deportation. We conclude that their due process and equitable estoppel claims are without merit, and affirm the judgment of the district court.

I

The Sulits entered the United States as visitors from the Philippines on September 22, 1990, and October 13, 1990, respectively, with authorization to remain here for one year. On April 7, 1993, the Immigration and Naturalization Service ("INS") issued an order to show cause charging the

Sulits with deportability under 8 U.S.C. § 1251(a)(1)(B) (1993) as aliens who have remained in the country longer than permitted. The Sulits conceded deportability, but requested asylum and withholding of deportation based on abuse they had suffered at the hands of the New People's Army. An immigration judge ("IJ") granted the Sulits' request for asylum and withholding of deportation.

On June 24, 1994, the INS appealed the IJ decision to the Board of Immigration Appeals ("BIA"), claiming generally that the Sulits "failed to demonstrate a well-founded fear of persecution on any of the statutory grounds," and more specifically, that the Sulits were not members of a cognizable social group. During the pendency of the deportation proceedings, the Sulits filed an application for adjustment of status based on the IJ's grant of asylum. Despite the pending appeal before the BIA, the Sulits denied in their application that they were "now in exclusion or deportation proceedings."

In an order issued on March 26, 1996, the BIA reversed the IJ's determination that the Sulits had been persecuted based on either political opinion or membership in a social group and vacated the IJ order granting asylum and withholding of deportation. It further ordered the Sulits deported and allowed them thirty days to voluntarily depart.

On May 29, 1996, the Sulits appeared for their adjustment of status interview with the INS, but did not inform the interviewing officer of the BIA decision. On October 1, 1996, failing to realize that the BIA had denied the Sulits' asylum applications, the INS approved their adjustment of status applications.

The Sulits subsequently appealed the BIA decision denying their asylum application to this Court, which affirmed the BIA decision in a memorandum disposition.

Sulit v. INS, 114 F.3d 1195 (9th Cir.1997) (table). Based on our affirmance of the BIA decision, the INS issued a warrant of deportation to the Sulits.

The Sulits then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and for an order enjoining their deportation, in the district court alleging that the INS had violated their due process rights and that it was estopped from deporting them because their adjustment of status applications had already been approved. They asserted jurisdiction under § 2241, 28 U.S.C. § 1331, and several other jurisdictional provisions. The district court denied their petition and this timely appeal followed.

II

■ Because the BIA issued its final order of deportation on March 26, 1996, pre-IIRIRA law applies to the Sulits' case. See Hose v. INS, 180 F.3d 992, 994–95 (9th Cir.1999) (en banc). Applying pre-IIRIRA immigration law, it is clear that in part the Sulits simply seek the review already afforded them on direct appeal. See 8 U.S.C. § 1105a(c) (1995). To that extent, we cannot consider the Sulits' contention that the INS's notice of appeal to the BIA failed to place them on notice that it was appealing the IJ's finding of past or future persecution based on both membership in a social group *and* political opinion. See Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir.1994) (quoting Reid v. Engen, 765 F.2d 1457, 1461 (9th Cir.1985)) (petitioner cannot obtain review of procedural errors in administrative process that were not raised before INS "merely by alleging that every such error violates due process.").

■ However, the Sulits' remaining due process claims are not foreclosed.[1] IIRIRA did not repeal the statutory habeas corpus remedy available via 28 U.S.C.

---

1. The Sulits contend that their "green cards" were improperly seized by the INS without a hearing; that the INS failed to provide them with any notice requiring them to surrender

for deportation; and that their counsel failed to notify them that this Court had issued a decision in their case.

§ 2241 and such review extends both to constitutional and statutory questions. *See Magana–Pizano v. INS,* 200 F.3d 603, 609 (9th Cir.1999). Moreover, the Sulits' remaining due process claims implicate none of the "decisions or actions" of the INS to "commence proceedings, adjudicate cases, or execute removal orders" precluded from our jurisdictional scope by § 1252(g). *See Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 477–78, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

▮▮▮ The district court also had jurisdiction over the Sulits' equitable estoppel claim under 28 U.S.C. § 2241.[2] Section 2241 makes habeas review available to petitioners who are in custody only "in violation of the Constitution or laws or treaties of the United States." Because "the INS is the agency primarily charged by Congress to implement the public policy underlying" the immigration laws, *see INS v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982), and equitable estoppel is an element of federal common law, *see Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 821 (9th Cir.1992), the Sulits' equitable estoppel claim is based on a violation of the "laws" of the United States. *See Johnson v. Williford,* 682 F.2d 868, 871 (9th Cir.1982) (federal prisoners filing § 2255 habeas petitions may obtain

relief under the doctrine of equitable estoppel); *see also Weaver v. Maass,* 53 F.3d 956, 961 (9th Cir.1995) (relief under doctrine of equitable estoppel not available to state prisoners filing federal habeas petitions); *O'Bremski v. Maass,* 915 F.2d 418, 423 (9th Cir.1990).

### III

▮▮▮ The Sulits maintain that the INS violated their due process rights by seizing their "green cards" without providing a rescission hearing pursuant to 8 U.S.C. § 1256 and issuing a warrant of deportation despite their adjustment of status.[3] "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The INS failed to properly notify the Sulits of its intent to rescind their adjustment of status, *see* 8 U.S.C. § 1256, or to conduct a hearing as required by the INS regulations, *see* 8 C.F.R. § 246.1, prior to seizing their "green cards." The INS therefore clearly failed to follow its own procedural rules to the extent that it sought to "seize" the Sulits' green cards.

Although this violation of applicable regulations by the INS might pose an impedi-

---

**2.** The Sulits offer a litany of provisions based on which the district court could have exercised its jurisdiction: 28 U.S.C. §§ 1131, 1331, 1343, and 2241; 8 U.S.C. §§ 1105a and 1329; and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Because we find that we may assert jurisdiction pursuant to § 2241, we do not address the numerous other jurisdictional theories asserted. However, we note that 8 U.S.C. § 1329, as amended by IIRIRA, no longer provides the district court with jurisdiction to consider the Sulits' equitable estoppel claim. *Cf. Baria v. Reno,* 94 F.3d 1335, 1339 (9th Cir.1996); *Jaa v. INS,* 779 F.2d 569 (9th Cir.1986). As amended by IIRIRA, section 1329 only allows the district courts to exercise jurisdiction over all civil actions *brought by the United States* that arise under the provisions of subchapter 12 of the INA. *See* IIRIRA § 381(b) (providing that amendment to § 1329 "shall apply to actions filed after the date of the enactment of this

Act [Sept. 30, 1996]"). However, nothing in the language of § 1329 forecloses the operation of other jurisdictional mechanisms such as § 2241. *See Sabhari v. Reno,* 197 F.3d 938, 941–42 (8th Cir.1999).

**3.** The Sulits' claims that their attorney's failure to notify them of this Court's decision affirming the BIA order and that the INS's failure to provide them with notice to surrender for deportation violated their due process rights clearly fail. In the former case, as the district court pointed out, the Sulits may have a cause of action against their attorney, but not the INS. In the latter case, there is no requirement that a deportation warrant be served upon an alien before the alien is deported. *See Arreaza–Cruz v. INS,* 39 F.3d 909, 911 (9th Cir.1994); *see also* 8 C.F.R. §§ 241.32–33.

ment to deportation under pre-IIRIRA law, *see Choe v. INS,* 11 F.3d 925, 928 n. 4 (9th Cir.1993),[4] we conclude the regulatory violations do not require us to grant relief under the facts of this case. The Sulits were already subject to a final order of deportation and were not eligible for adjustment of status at the time it was granted. Thus, the INS's failure to rescind the Sulits' adjustment of status does not, under the facts of this case, preclude its ability to deport them pursuant to the BIA's final order of deportation. *See* 8 U.S.C. § 1255(a) (1995); *Choe,* 11 F.3d at 928; *Monet v. INS,* 791 F.2d 752, 754 (9th Cir.1986); *Oloteo v. INS,* 643 F.2d 679, 683 (9th Cir.1981).

In short, under the facts of the case, the INS's failure to follow its own procedural rules for rescinding an individual's adjustment of status does not preclude deportation.

### IV

 The government is not estopped from deporting the Sulits. The doctrine of equitable estoppel applies against the government only if it engages in affirmative misconduct going beyond mere negligence. *See Socop–Gonzalez v. INS,* 208 F.3d 838, 842 & n. 4 (9th Cir.2000). The Sulits contend that the INS should be estopped from deporting them because (1) upon inquiry two INS information officers told them that they could "file" an application for adjustment of status, and that providing such advice constitutes affirmative misconduct; and (2) they have acted in reliance on the grant of their application for adjustment of status.

Neither the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct. *See Socop–Gonzalez,* 208 F.3d at 843 (no evidence of a "deliberate lie" or "pattern of false promises" sufficient to constitute affirmative misconduct); *see also Mukherjee v.*

4. IIRIRA amended the relevant provision, 8 U.S.C. § 1256(a). Although it is arguable that the amendments apply to this case, it is

*INS,* 793 F.2d 1006, 1009 (9th Cir.1986) (no affirmative misconduct where consular officer failed to inform petitioner that his visa was approved and misinformed petitioner that he was not subject to a two-year residency requirement). In any event, estoppel against the government is unavailable where petitioners have not lost any rights to which they were entitled. *See Santiago v. INS,* 526 F.2d 488, 493 (9th Cir.1975) (en banc) (no affirmative misconduct where immigration officer admitted an otherwise excludable alien).

### V

In sum, although the district court had jurisdiction to entertain the Sulits' claims of due process violations and equitable estoppel, the claims fail on their merits.

**AFFIRMED.**

unnecessary for us to decide that question because the Sulits cannot recover under pre-IIRIRA law.