**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SONDANG SILITONGA,

     Petitioner,

  v.

ALBERTO R. GONZALES, Attorney
General,

     Respondent.

No. 05-9540
(No. A97-191-753)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL, ANDERSON**, and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Sondang Silitonga seeks review of the Board of Immigration Appeals' (BIA's) decision affirming an Immigration Judge's (IJ's) removal order. We deny the petition.

In January 2001, Ms. Silitonga, a native and citizen of Indonesia, entered the United States as a non-immigrant visitor, with authorization to remain until July 13, 2001. She remained beyond that date and obtained work using fraudulent documents. In May 2003, Ms. Silitonga applied for asylum, restriction on removal, and protection against torture based on her Christian religion.

At a hearing before an IJ, she testified that her father is a Seventh Day Adventist minister in Indonesia and that one night a "huge rock" was thrown through her parents' bedroom window. Admin. R. at 78. She also testified that while working as a nurse, she was psychologically traumatized by seeing Christian victims of Muslim rioters. She also recounted how every time she walked by a particular mosque on her way to work, Muslims "would call [her] all kinds of names that would defile [her] religion." *Id.* at 82. Finally, Ms. Silitonga indicated that she filed her application as soon as she "heard . . . about asylum." *Id.* at 84.

The Immigration Judge (IJ) denied Ms. Silitonga's application, concluding that she failed to demonstrate past persecution or a fear of future persecution or

-2-

torture.  The IJ noted that Ms. Silitonga was ethnically Indonesian and expressed doubt that someone would "stop[ ] her in the street . . . to see if [she] [is] a Muslim." *Id.* at 54.  Additionally, the IJ cited the "Country Reports on Human Rights Practices for Indonesia," *id.* at 46, to find that "there is a lot of problems in Indonesia," but President "Megawati is working to unite all the individuals," *id.* at 54.  The IJ further found no circumstances that would excuse Ms. Silitonga's delay in seeking asylum after arriving in the United States. Ms. Silitonga was ordered removed to Indonesia.

The BIA adopted and affirmed the IJ's decision, stating that Ms. Silitonga did not meet the one-year deadline for filing asylum requests, *see* 8 U.S.C. § 1158(a)(2)(B), and failed to show "past persecution or a clear probability of persecution or torture were she returned to Indonesia." Admin. R. at 4.  In deciding that Ms. Silitonga did not face a clear probability of persecution, the BIA referred to the "The United States Department of State International Religious Freedom Report for 2002" and stated:

> [T]here is widespread tension between Muslims and Christians that has erupted into localized violent conflicts in recent years. . . .  [T]he government has worked to end or decrease violence in some areas, but in other areas some military units sided with their coreligionists, both Muslim and Christian.  While these problems are serious, we do not agree that they rise to a pattern and practice of persecution . . . .

*Id.*

This petition for review followed.

DISCUSSION

When the BIA affirms the IJ's decision in a brief order that contains some of the BIA's own reasoning, we review the IJ's decision as modified by the BIA, *Batalova v. Ashcroft*, 355 F.3d 1246, 1254 (10th Cir. 2004); *accord Chacon-Botero v. U.S. Attorney General*, 427 F.3d 954, 956 (11th Cir. 2005); *Eta-Ndu v. Gonzales*, 411 F.3d 977, 982 (8th Cir. 2005); *Ssali v. Gonzales*, 424 F.3d 556, 561 (7th Cir. 2005). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), whereas legal determinations are reviewed de novo, *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).

Ms. Silitonga identifies for review only her restriction on removal and torture claims. Consequently, we need not address her asylum claim. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

To obtain restriction on removal, an alien must demonstrate that her "life or freedom would be threatened in [the proposed country of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien's life or freedom is presumed to be threatened if she "is determined to have suffered past persecution in the proposed country of removal." 8 C.F.R. § 208.16(b)(1)(i). Otherwise, the

alien must meet a clear probability standard—she must show that it is more likely than not that she would be persecuted if removed. *See INS v. Stevic*, 467 U.S. 407, 429-30 (1984); 8 C.F.R. § 208.16(b)(2). Similarly, the Convention Against Torture (CAT) restricts removal to a particular country if "it is more likely than not that the petitioner will be tortured if removed to that country." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005). The two types of restriction differ most profoundly in that 8 U.S.C. § 1231 "requires proof of persecution on account of a protected class, whereas [the] CAT is not concerned with the reasoning of the persecution, just whether the persecution arises to the level of torture." *Chaib*, 397 F.3d at 1277-78.

Ms. Silitonga first argues that the IJ relied on evidence outside the administrative record to assess her restriction on removal and CAT claims. Specifically, she points out that the State Department's country report for Indonesia is not in the record but was mentioned by the IJ.[1] We cannot reach the argument, however, because Ms. Silitonga failed to raise it when she appealed, through counsel, to the BIA. *See* Admin. R. at 19-30, 37; *Rivera-Zurita v. INS*, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (stating that "[t]he failure to raise an issue

---

[1] We are not entirely convinced that the IJ relied on the country report, rather than the religious freedom report, which is part of the record. We also note that the BIA made no mention of the country report, instead citing only the religious freedom report in affirming the IJ's decision.

on appeal to the [BIA] constitutes failure to exhaust administrative remedies" and precludes this court from exercising jurisdiction).

We reject Ms. Silitonga's assertion that her duty to exhaust was excused by the fact that her counsel was unaware when he filed the appeal that the country report was not in the record.[2]  According to Ms. Silitonga, "[t]he transcript sent to the Petitioner [by the BIA] did not include any of the evidence submitted in connection with the hearing" and she "assumed that [the] report was properly contained in the administrative record."  Petitioner's Reply Br. at 5.  Exhaustion is dictated by Congress, *see* 8 U.S.C. § 1252(d)(1), and cannot be avoided without some congressional mandate or, possibly, a showing that exhaustion would be futile, *see Booth v. Churner*, 532 U.S. 731, 736 n.4 & 741 n.6 (2001) (holding that Congress intended to create an exceptionless exhaustion requirement in the Prisoner Litigation Reform Act, but observing generally that there is nothing to exhaust when the administrative process cannot provide relief or function in any responsive manner); *Sousa v. INS*, 226 F.3d 28, 32 (1st Cir. 2000) (stating that statutory exhaustion requirements may be circumvented "where a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor").  Ms. Silitonga does not attempt to identify

---

[2]     During the proceedings before the IJ and BIA, Ms. Silitonga had different counsel than she currently has.

-6-

any congressionally approved exception to § 1252(d)(1)'s exhaustion requirement. Nor can she claim that the BIA was powerless to correct a deficiency in the administrative record. *See Baria v. Reno*, 94 F.3d 1335, 1340 (9th Cir. 1996) (stating that an inadequate administrative record is the "type of procedural error[ ] which the [BIA] has the authority to correct and which must therefore be raised first before the [BIA]"). Had Ms. Silitonga not assumed that the country report was in the record, she could have raised the issue with the BIA—or at least complained about not receiving "any of the evidence submitted in connection with the hearing," Petitioner's Reply Br. at 5. Because our jurisdiction rests on the exhaustion of administrative remedies and not on the accuracy of counsel's assumptions, our review is foreclosed.

Ms. Silitonga next contests the IJ's findings that her Indonesian ethnicity shields her from being identified as a Christian and that conditions in Indonesia are improving for Christians. Insofar as these findings concern Ms. Silitonga's § 1231 restriction-on-removal claim, they were not administratively contested. In fact, on appeal to the BIA, Ms. Silitonga made no restriction-on-removal arguments and instead expressly acknowledged her inability to show a clear probability of persecution in Indonesia. *See* Admin. R. at 22. Accordingly, she devoted all of her appellate attention to asylum and CAT issues. Although the BIA apparently overlooked Ms. Silitonga's acknowledgment and addressed

whether there exists a clear probability of persecution in Indonesia for Christians, we will not address claims deliberately abandoned on appeal to the BIA. *Cf. Osborne v. Babbitt*, 61 F.3d 810, 814 (10th Cir. 1995) (holding that appellants had waived their challenge in this court to an administrative law judge's finding by conceding the finding's accuracy during an administrative appeal).

To the extent that Ms. Silitonga's remaining issues concern the CAT, she has identified nothing in the administrative record showing a clear probability that she will be tortured in Indonesia "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 208.18(a)(1). Indeed, the religious freedom report for 2002 states that the Indonesian government has "finally t[aken] action [against interreligious violence] by brokering peace accords, effectively deploying troops, and cracking down on extremists." Admin. R. at 179. The report also indicates that the government has attempted to promote religious pluralism, freedom, and interfaith dialogue and has initiated an investigation into the causes of one of the worst religious conflicts between Christians and Muslims. *Id.* at 172, 179. We recognize the report's serious concern that some Indonesian military units have been "accused of siding with their coreligionists," *id.* at 168, and that "[t]he lack of an effective government response to punish perpetrators and prevent further attacks continued to lead to allegations that officials were complicit in some of

the incidents," *id.* But this and the other record evidence does not compel the conclusion that Ms. Silitonga would more than likely be tortured by, or with the acquiescence of, a public official if removed to Indonesia.

The petition for review is DENIED.

Entered for the Court


Bobby R. Baldock
Circuit Judge