**Vasile FERSETA, et al., Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 01–70658.

INS No. A71–597–677, A71–510–968.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 2002.

Decided April 29, 2002.

Before HUG and TASHIMA, Circuit Judges and SEDWICK, District Judge.*

MEMORANDUM **

Vasile and Maria Ferseta, husband and wife and natives and citizens of Romania, petition for review of an order of the Board of Immigration Appeals ("BIA") dismissing their appeal from an immigration judge's ("IJ") order denying their application for asylum and withholding of deportation. The Fersetas conceded deportability for staying in the United States longer than permitted but allege fear of mistreatment at the hands of the Romanian government because of their anti-Communist political opinion.

We have jurisdiction pursuant to INA § 242(b); 8 U.S.C. §§ 1252(b), and we deny the Fersetas' petition for review. Because the parties are familiar with the factual and procedural history of this case, we do not recount it here except as necessary to explain our decision.

The BIA's decision that an alien has not established eligibility for asylum is reviewed under the substantial evidence standard. *See Ochave v. INS*, 254 F.3d 859, 861–62 (9th Cir.2001). The standard is extremely deferential, requiring a reviewing court to uphold the Board's denial unless an alien demonstrates "that the evidence he presented was so compelling that

no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Finally, when the BIA has conducted a de novo review, as it has done in this case, "our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998).

I. Persecution

■ Under § 208(b)(1) of the INA, 8 U.S.C. § 1158(b)(1), the Attorney General has the discretion to grant asylum to "refugees." *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The Act defines a "refugee" as a person unable to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). This Court has defined persecution as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive." *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir.1995) (quotations and citations omitted).

An alien seeking asylum has the burden of proving his eligibility for this relief. *See* 8 C.F.R. § 208.13(a)(2000); *Mejia–Paiz v. INS*, 111 F.3d 720, 723 (9th Cir.1997).[1]

---

* Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. While asylum is discretionary, a petitioner is entitled to withholding of deportation if the evidence demonstrates a clear probability that the applicant would be persecuted were he to be deported to his home country. A petitioner must show it is more likely than not that he will be persecuted on account of one of the five enumerated factors were he to return. If a petitioner meets this high standard, the Attorney General must grant withholding of deportation. *Gui v. INS*, 280 F.3d 1217, 1230 (9th Cir.2002).

The Fersetas have failed to meet this burden.

## A. Past Persecution

Mr. and Mrs. Ferseta both concede that while living in Romania, they were never physically harmed, tortured or arrested. Indeed, most of the problems that the Fersetas advance are merely forms of discrimination. Both claim they were subjected to employment discrimination and Mr. Ferseta also claimed discrimination in educational opportunity. As we held in *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995), "[d]iscrimination ... as morally reprehensible as it may be, does not ordinarily amount to persecution within the meaning of the Act." Mr. Ferseta also claims that he was forced to resign from his job; however, the record shows that he was actually laid off along with other employees and was even given a pension. The other incidences of mistreatment, which the Fersetas proffer, likewise fail to rise to the level of persecution as used in the Act.[2]

## B. Well–Founded Fear of Future Persecution

■ To establish a well-founded fear of persecution, the alien must show not only that the fear of persecution is genuine, but must also provide "credible, direct and specific evidence in the record of facts that would support a *reasonable* fear that the petitioner faces persecution." *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1256 (9th Cir.1992) (citation omitted). We conclude that the Fersetas' argument that they fear harm should they be returned to Romania lacks the evidence required for a finding of a well-founded fear of persecution.[3]

In order to establish a well-founded fear of persecution, the Fersetas must show that their fears are "both objectively reasonable and subjectively genuine." *Ladha v. INS*, 215 F.3d 889, 897 (9th Cir.2000). Even assuming the Fersetas' fear of future persecution is subjectively genuine, they still fail to meet the objectively reasonable standard. This is because, again, the Fersetas have not shown past persecution and, even if they have, changed country conditions rebut any presumption of future persecution. *See Agbuya v. INS*, 241 F.3d 1224,1228 (9th Cir.2001) (an alien can satisfy the objective component by demonstrating past persecution, which triggers a rebuttable presumption of a well-founded fear of future persecution).[4]

Although a reasonable fact-finder could have found these incidences sufficient to establish past persecution and perhaps a well-founded fear of future persecution based on a protected ground, we believe that a factfinder would not be *compelled* to do so. *See Elias–Zacarias*, 502 U.S. at

2. These other incidents include questioning by police, denial of a travel visa, threatening phone calls from unknown individuals, dislike by neighbors, and destruction of family home. Although destroying the family home sounds like potential persecution, it was an act of violence connected to Mrs. Ferseta's family and did not "create a pattern of persecution closely tied to the petitioner." *Arriaga–Barrientos v. INS*, 937 F.2d 411, 414 (9th Cir. 1991)

3. The Fersetas state that they have received letters from friends in Romania warning them not to return. They also point to the alleged

disappearance of prominent members of the political party to which Mr. Ferseta belonged.

4. Indeed, much of the discrimination and mistreatment of which the Fersetas complain occurred under the regime of former president Ceaucescu, who was deposed and executed in 1990. A State Department expert, when asked about this case and the current state of affairs in Romania, stated that Mr. Ferseta's "political activism in the post-revolutionary period place him in the mainstream of Romanian political life."

483–84 (court must uphold BIA's denial of asylum unless alien demonstrates "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution").

We conclude that the Fersetas have failed to produce evidence that compels the conclusion of either past persecution or a well-founded fear of future persecution, if the Fersetas were returned to Romania.[5]

## II. Allegations of Due Process Violations

The Fersetas argue that the BIA violated their due process rights by (1) waiting six years to affirm the IJ's decision and (2) taking "administrative notice of changes in the Romanian government in the decade since the couple had left Romania without giving them the opportunity to respond to some of those facts."

In regards to the first argument, the Fersetas state that "[t]he delay of five years ... should estop the Board from enforcing the deportation order after it affirmed the Immigration Judge's deportation decision." This Court has held on numerous occasions, in the context of INS cases such as this one, that "[t]he doctrine of equitable estoppel applies against the government only if it engages in affirmative misconduct going beyond mere negligence." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir.2000); *See also Cortez–Felipe v. INS*, 245 F.3d 1054, 1057 (9th Cir.2001) The Fersetas do not point to, and we are unable to find, any affirmative misconduct by the Board. Accordingly, the Fersetas' estoppel argument fails.

As to the Fersetas' second due process argument, the contested post-hearing evidence in the record was supplied by the Fersetas themselves. Therefore, we reject the argument that it was a violation of due process to deny the Fersetas' an opportunity to respond to their own evidence.

Therefore, the Fersetas' petition for review is DENIED.

---

**5.** Because the Fersetas have failed to satisfy the lessor standard of proof to establish eligibility for asylum, they necessarily fail to satisfy the more rigorous standard for withholding of deportation. *See Cruz–Navarro v. INS*, 232 F.3d 1024, 1031 (9th Cir.2000).

